## PEOPLE v. TAYLOR.

(Supreme Court, Appellate Division, Third Department. March 2, 1904.)

1. MANSLAUGHTER—REPELLING ASSAULT—UNNECESSARY FORCE.

Where defendant used more force than was necessary in repelling an assault, and the assaulting party died from injuries so received, but the evidence did not show beyond a reasonable doubt that death was caused by the unnecessary force, defendant could not be convicted of manslaughter.

2. SAME—EVIDENCE.

In a prosecution for manslaughter, defendant claimed to have acted in self-defense in repelling an assault with a knife, which was introduced in evidence; and defendant's wife testified that she saw deceased have the knife in question on different occasions, and a witness testified that he gave the knife to deceased in December of a certain year. *Held*, that evidence by a person who kept the county poorhouse, where deceased lived, that he had kept that house since January 1st of the year before mentioned, that deceased stayed there until the last of March, and that, while he saw him have a knife, it was not the knife in question, was irrelevant.

3. SAME—INSTRUCTIONS—CURING OF ERROR.
   In a prosecution for manslaughter, error in charging that the people
   were bound to satisfy the jury by a preponderance of evidence of defend-
   ant's guilt, and that when they were so satisfied they should find defend-
   ant guilty, was not cured by an instruction that the people did not ask
   the jury to find a verdict on insufficient evidence, but, unless they should
   believe that the case was proven beyond a reasonable doubt, they must
   acquit, and that by a "reasonable doubt" was meant, not a speculative
   doubt, but such a reasonable doubt as an ordinarily reasonable man would
   have after looking the entire transaction over.

Appeal from Tioga County Court.

William Taylor was convicted of manslaughter, and appeals. Re-
versed.

The defendant was indicted for manslaughter in the first degree.
The charge is that on August 26, 1903, he committed an assault and
battery upon one Charles Warner under circumstances that rendered
such act a "crime and misdemeanor of assault in the third degree,"
and that as the result of such assault said Warner died on August 29,
1903.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER,
and HOUGHTON, JJ.

Lynch & Davis (Martin S. Lynch, of counsel), for appellant.

Stephen S. Wallis, Dist. Atty. (Oscar B. Glezen, of counsel), for the
People.

PARKER, P. J.   Warner was an old man, some 70 years of age,
and somewhat crippled with rheumatism, and was an inmate of the
county poorhouse.   He was in the habit, however, of stopping for days
at a time at the house of the defendant, who was a farmer.   On the
26th of August last, both had been to the village to see a fireman's
parade, and both had returned home to the defendant's house in the
evening, and both were then drunk.   Both continued to drink after
their return, and finally they got into a fight in the kitchen of the de-
fendant's house, and Warner was so badly bruised and shaken up that
he subsequently died from the effects thereof.   The defendant, how-
ever, claims that the fight was started by Warner's attacking him with
an open knife, and that the assault and the treatment which Warner
then received were given while the defendant was protecting himself
from such attack, and in his (the defendant's) effort to avoid the knife
and wrest it away from Warner.   In short, the issue presented by the
defendant was that his assault upon Warner was entirely in self-de-
fense.   No one, save the deceased, saw anything of the fight, except the
defendant and his wife.   Therefore their statements are the only means
we have of ascertaining its details.   Who commenced it, how vigor-
ously or persistently the deceased fought, and what weapons he used,
can be ascertained only from their statements.   The defendant testi-
fied that the deceased attacked him with a knife—the one which was
produced in evidence—and that whatever injuries he inflicted upon the
deceased were caused in repelling that attack.   The wife testified that,
when she heard the noise and went into the room, she saw the deceased
and the defendant clinched, and that in such struggle they both fell

through the door into the adjoining milkroom, and onto the floor. Before they fell, she heard the defendant tell the deceased not to draw a knife on him, and the deceased said he would kill him. Defendant said, "You have killed one man, but you can't kill me." While struggling on the floor in the milkroom, she saw the deceased have the knife in his hand, and the defendant had hold of his wrist with his left hand, and was apparently trying to wrest the knife from the deceased. After the fight was over, she testifies she found the knife on the floor in the milkroom. It is not practicable or necessary to repeat here all of their details of such fight. It may be conceded that it is hardly sufficient to account for all the bruises and the actual conditions found upon deceased after his death, but the all important question is, who commenced the fight? Did the deceased begin it by an attack upon the defendant with the knife? If he did, the case is left in very grave doubts as to whether the defendant can be said to have committed an unjustifiable assault upon the deceased, which resulted in the latter's death. I do not discover in the evidence any fact tending to show that the deceased did not make such an attack. The weight of evidence is that the knife was the deceased's, and no expression of the defendant at the time of the occurrence, or statement made the next day, is inconsistent with his sworn testimony that deceased first attacked him with the knife. In the face of the testimony of the defendant and his wife to that effect, the burden of proof is with the people to show that such an attack was not made; and, although we may disbelieve their statement, for the reason that they are so much interested to establish it, we can hardly say that it is proven beyond a reasonable doubt that it was the defendant, and not the deceased, that commenced the fight. The defendant's claim may be true; there is no proof that it was not; and therefore we must consider the case as if the defendant was called upon to defend himself against such an attack. If, when the fight first began, the defendant was defending himself against the deceased's attack upon him with a knife, how can we say that he used more violence than was necessary in such defense. We know nothing of the force and persistency with which such attack was made, except as the defendant and his wife testify to them; and, as they describe it, and in view of the fact that the defendant was concededly drunk, and so likely to be prevented from intelligently using his full strength, what shall we assume he did, more than was necessary to do in order to prevent a serious injury to himself? But if we conclude, from the bruised condition of the deceased, that more force than was necessary must have been used, still the evidence hardly sustains the conclusion that death resulted from such extra force. The medical testimony shows that no single injury was sufficient to cause death; that resulted from the shock caused by all the injuries taken together. The evidence therefore fails to show beyond a reasonable doubt that, even if more force than was in fact necessary to defend himself was used, such extra force, which was the only force unlawfully used, resulted in the death of the deceased. The defendant might be guilty of an unjustifiable assault under such circumstances, but, the fact that death resulted therefrom not being proved, manslaughter could not be predicated upon it. This point was fairly raised by the defendant in a re-

quest that the court so charge, which was refused. Also the court had already charged substantially the other way. And in this respect an error seems to have been made.

Another error is claimed by the defendant to have been made in the admission of evidence. The defendant's wife had testified that she saw the deceased have the knife in question on different occasions. The witness Smith testified that he gave such knife to the deceased in December, 1902. For the purpose of disproving the claim that the knife was the deceased's, the people swore one George Barr, who testified that he had kept the county poorhouse since January 1, 1902; that the deceased was then there and stayed until the last of March, and then went up to the defendant's; that while there he saw the deceased have a knife, but it was not the knife in question. This evidence was taken under the defendant's objection and exception. Manifestly it was entirely immaterial to any issue in the case., Smith testified that the deceased got the knife in December, 1902. That is nearly a year after the time Barr alludes to, and, of course, in view of that fact, Barr could not be expected to see it in the deceased's possession. But assume that Barr referred to the winter of 1903 when he saw the other knife in the deceased's possession, and never saw this one; it does not at all follow that deceased did not have this one. It is an improper method of reasoning, that, because deceased had another knife during that winter, it may be presumed that he did not have this one. Such evidence does not tend to disprove that the deceased did not have this knife the next August, nor that Smith did not give it to him the previous December. Yet, by allowing it to go to the jury, they were practically instructed that they might legitimately reason in that way. The question as to whether or not the deceased had that knife was one of considerable importance, and the admission of Barr's testimony was well calculated to work an injury to the defendant.

A further error is claimed by the defendant to have been committed in the charge of the court. The jury were instructed that the people were bound to satisfy them "by a preponderance of evidence of the guilt of the defendant, and, when they do satisfy you of that, it should be your province and duty to bring the defendant in guilty." This, of course, was clearly erroneous, but the people claim that it was cured by a further charge to the following effect:

"The people do not ask you to find a verdict on insufficient evidence, and, unless you believe that the case is proven beyond any reasonable doubt, you must acquit. What we mean by 'reasonable doubt' is not a speculative doubt as to what a person might have done, but such a reasonable doubt as an ordinarily reasonable man would have after looking the entire transaction over, and the defendant is entitled to the benefit of such a doubt at every turn of the case."

The substance of this charge seems to be that, unless they believe the case proven beyond a reasonable doubt, they should acquit the defendant, but, if there is a preponderance of evidence against him, they must find him guilty; that is, that a preponderance of evidence proves beyond a reasonable doubt. The definition which the court gave of "a reasonable doubt" does not interfere with this conclu-

sion. The jury may very well have so understood it. In fact, I do not see how they could have understood it in any other way; and, in view of the very doubtful character of the evidence by which it is sought to convict this defendant of manslaughter, it is more than probable that such charge operated greatly to the defendant's injury. He was convicted because the jury believed that the preponderance of the evidence was against him, and the rule that gives him the benefit of a reasonable doubt was thus eliminated from the case.

For these reasons, the judgment and order should be reversed, and a new trial granted. All concur; CHASE and CHESTER, JJ., in result.