Jasen, J.
The principal issue presented for our consideration is whether, in a prosecution for homicide,[1] a defendant, in support of his contention that he had reasonable grounds to believe himself in imminent danger from an assault by the deceased, may offer evidence to show that, prior to the homicide, the deceased committed specific acts of violence of which the defendant had knowledge.
Defendant Willie Miller was charged with fatally shooting his sister Minnie in the course of a violent family quarrel. After work on October 12, 1972, the members of the Miller family returned home from their various places of employment. Among the persons present in the home were the defendant, then 20 years old, the deceased, 22 years old, their mother, Mrs. Mae Miller, their sister and the deceased’s boyfriend, a man named Eddie Brooks. Brooks came prepared with a quantity of Seconal capsules which he distributed to the members of the family. Both Willie and Minnie ingested at least two pills apiece. Brooks also had marijuana, which was proffered to a number of persons, again including the defendant and the deceased. After Brooks left the house, Willie and Minnie went out to cash her paycheck, using some of the cash thus obtained to purchase liquor. During the course of the next few hours, the family and friends played some records, danced and drank quantities of "screwdrivers”, wine and beer. At some point in the evening, Minnie announced that she was drunk and retired upstairs to take a nap. Sometime after midnight, Minnie awakened and discovered that the remaining money from her cashed paycheck was missing. She became extremely distraught and accused her mother of stealing the money. After Minnie had left the party, *547 Mae Miller had gone out to visit a nearby friend. Willie brought her back to the house so that she might deny the accusation. As soon as Mae Miller returned home, Minnie stridently repeated her allegations and endeavored to strike her mother. Willie grabbed her arm and forced her down to her side. The mother started to cry and frightened, she sat down out of harm’s way. Minnie, however, directed her attentions at her brother. She began to punch, kick and grab him, cursing and swearing at him all the while. Willie, on the other hand, was simply trying to calm his sister down. When others attempted to subdue Minnie, she pushed them out of the way. Minnie ripped out the wires from a television set she had purchased for her mother. At one point, Willie attempted to hold Minnie down in a chair but could not restrain her for very long. Still incensed, Minnie went into the kitchen, followed by Willie. Minnie warned him off, telling him "Get out of here before I kill you”. She reached into a drawer and removed a large barbecue fork. When this was wrestled away from her without damage, she went back to the drawer and pulled out a butcher knife. She slashed at one side of Willie’s face, knocking off his glasses and cutting his chin. Willie fled from the kitchen and ran upstairs. Minnie returned to the living room where she stood for a time in the corner "slobbering” at the mouth.
According to Willie’s testimony at the trial, Minnie returned upstairs, remarked that she should have cut his throat when they were downstairs, and told him that she was going to kill him. When she continued to advance, Willie backed up into his room and lifted his shotgun from a corner of his closet. When Willie emerged from his room, Minnie was still outside, holding the knife in her upraised hand. As she started walking towards him, he fired the shotgun, inflicting a fatal abdominal wound.
After the shooting, defendant co-operated fully with the police. He voluntarily gave them a sworn statement which shed great doubt on his claim of self-defense. In the statement Willie stated that his shotgun was stored in a closet, that he loaded it and took care to be certain that the safety was off. "My mother had come into the room, and tried to get the gun away from me. I pushed her away, walked into the hallway, where my sister was still screaming about what she was going to do to me; I looked to my sister who was then standing about eight to ten feet away from my room, and pointed the *548 gun at her from my hip, and discharged same toward her.” He also stated that he did not actually see a knife in her hand, although it was his opinion that she still had the knife. Even more damaging was his statement that, after being cut, he told his sister, "OK, I’m going to get you.”
At the trial, to substantiate the defense claim of justification, counsel attempted to elicit from various witnesses the details of specific instances of violent behavior on the part of the deceased of which the entire family, including defendant, was aware. The defense offered to prove that Minnie would become extremely violent when under the influence of alcohol or drugs, that she had been confined in a mental institution, that she had once fought with her mother and bit her mother’s finger so severely that the nail had to be removed, that she had pushed her mother down a flight of stairs, that Minnie had, on occasion, thrown objects at her mother, and had once, for no apparent reason, jumped through a glass window. The trial court, citing People v Rodawald (177 NY 408), refused to permit the defendant to introduce evidence of specific violent acts of the deceased. In response to defense counsel’s argument that as a matter of commonsense proof of specific acts should be admissible because of its probative value, the court stated that "[ujnfortunately the law of the State of New York hasn’t gone into that.”
The jury found the defendant guilty of murder. The Appellate Division, with one Justice dissenting, affirmed the conviction, noting that, in its view, "the trial court properly refused to allow questions framed by the defense counsel which were directed to specific acts of violence”. (People v Miller; 46 AD2d 108, 109.)
A defendant in a homicide or assault prosecution may assert, as a defense, that his use of physical force upon the alleged victim was not unlawful since it was necessary to protect himself or others from the victim’s aggression. (See Penal Law, § 35.15.) The defense is only available where the belief of the defendant that he was subject to an imminent attack is a reasonable one. Thus, the perceptions, the state of mind, of the participants to the encounter are critical to a ^plaim of justification.
It has long been the rule in this State that a defendant, in a prosecution for homicide, may introduce evidence that the deceased had a reputation as a "quarrelsome, vindicative or violent” person, provided that the defendant was aware of this *549 reputation at the time of the incident. (People v Rodawald, 177 NY 408, 423, supra; People v Gaimari, 176 NY 84, 95; People v Flournoy, 14 AD2d 854.) "The character of the deceased with reference to violence, when known to the accused, enables him to judge of the danger and aids the jury in deciding whether he acted in good faith and upon the honest belief that his life was in peril. It shows the state of his mind as to the necessity of defending himself.” (People v Rodawald, supra, p 423; see, generally, Evidence—Self-Defense—Reputation, Ann., 1 ALR3d 571.) Similarly, the threats of the deceased against the defendant are admissible, whether communicated to the defendant or not. Even if the defendant was not aware of the threat, the threat still is probative of the deceased’s state of mind and bears, thus, on whether the deceased was the aggressor. (Stokes v People, 53 NY 164, 174.) On the other hand, if the defendant did hear of the threat, the threat may also serve to indicate the defendant’s own apprehensive state of mind. (People v Gaimari, 176 NY 84, 95, supra; Richardson, Evidence [10 ed], § 157.)
The courts of our State have consistently held that while the deceased’s general reputation for violence is provable, evidence of specific acts of violence by the deceased is inadmissible. (Eggler v People, 56 NY 642; Thomas v People, 67 NY 218, 223; People v Druse, 103 NY 655; People v Gaimari, 176 NY 84, 95, supra.) "[T]his is improper”, we said in People v Rodawald (supra), "not only because character is never established by proof of individual acts, but because each specific act shown would create a new issue.” (177 NY 408, 424; see 40 CJS, Homicide, § 222, subd a, par [2], pp 1141-1142.) Today we are called upon to reconsider this aspect of the rule.
The rule we have followed in New York is the traditional rule and, for many years, was the general rule. (See Self-Defense—Evidence—Admissibility, Ann., 121 ALR 380, 382.) However, the trend of the decisions in other jurisdictions, even in certain jurisdictions which formerly denied the admissibility of testimony as to specific acts, is towards the admissibility of such evidence.[2]
*550 The States that authorize the admission of prior violent acts of the deceased, known to the defendant, stress the relevance of such evidence on the issue of whether the defendant’s asserted fear of the deceased was reasonable. (See McMorris v State, 58 Wis 2d 144; State v Gordon, 37 Del 219, 222.) Noted commentators have taken similar positions. (See 1 Wigmore, Evidence [3d ed], § 198, pp 676-677; Richardson, Evidence [10th ed], § 157, p 128; see, also, Comment, 1974 Wis L Rev 266.) A few jurisdictions have gone so far as to permit the defendant to introduce into evidence the criminal record of the deceased. (See Commonwealth v Amos, 445 Pa 297; cf. Ruffin v State, 50 Del 83.) On the other hand, the States that continue to adhere to the traditional rule of exclusion place emphasis upon the theory that a reputation for violence cannot be proved by evidence of specific acts. (See State v Maggitt, 517 SW2d 105 [Mo]; Johnson v Commonwealth, 477 SW2d 159 [Ky].)
While it has long been recognized that circumstantial evidence of the victim’s character and reputation is relevant to show the state of the defendant’s mind as to the necessity of defending himself, such evidence was not always admissible. (Cf. Richardson, Evidence [10th ed], §§ 145, 149, 157.) Reasons of policy have led the courts to impose restrictions upon the method by which this relevant evidence may be proved and to regulate, carefully, the extent to which such evidence may be received in particular cases.
The most fundamental policy consideration is that every person, regardless of his relative worth to the community, has the right to live undisturbed by unlawful assault. Since "the worst man has the right to live the same as the best, no one may attack another because his general reputation is bad.” (People v Rodawald, 177 NY 408, 422-423, supra.) Thus, evi *551 dence that the deceased generally had a poor reputation in the community is not admissible lest a jury find a homicide justifiable for the wrong reason—i.e., that the deceased was unworthy of life. This fear has also militated against the admission of proof that the deceased committed specific vicious, immoral or illegal acts in the past.
A second consideration is the need to carefully limit and narrow the issues that the jury must decide. In our adversary system, it is important to rivet the jury’s attention on the real issues at trial without undue diversion to collateral matters having little or no bearing on the guilt or innocence of the defendant. (Cf. People v Van Gaasbeck, 189 NY 408, 418.)
These considerations are, of course, not without counterbalancing factors. The paramount purpose of all rules of evidence is to ensure that the jury will hear all pertinent, reliable and probative evidence which bears on the disputed issues. The considerations heretofore discussed do not mandate the total exclusion of character evidence; rather, they explain the need for careful and reasonable rules by which relevant facts may be adduced in an orderly manner, without causing needless confusion and obfuscation.
Upon due reflection, we believe that the present New York rule should be modified to permit a defendant in a criminal case, where justification is an issue, to introduce evidence of the victim’s prior specific acts of violence of which the defendant had knowledge, provided that the acts sought to be established are reasonably related to the crime of which the defendant stands charged.
Generally, character and reputation may not be proved by reference to specific acts, except to impeach the credibility of character witnesses. However, the crucial fact at issue, where a claim of justification is presented, is not the character of the victim, but, rather, the state of mind of the defendant. Knowl- | edge of prior violent acts of the victim may weigh heavily upon the mind of a defendant when, as asserted, he moved to blunt the aggression of the victim. Indeed, knowledge of specific instances of violence by the victim may have a more significant impact on a defendant’s mental state than any vague awareness of a general reputation for violence. A demonstrated capacity for acts of extreme violence will no doubt instill a fear more quickly and more deeply than a veiled threat or knowledge of a generally violent proclivity. For this reason, we believe that a defendant, asserting at trial *552 justification as a defense, ought to be permitted to adduce evidence of violent acts of the victim and his knowledge thereof. At the same time, however, the jury must be cautioned that this evidence may only be considered with respect to the issue of the reasonableness of defendant’s apprehensions, and, further, that the character of the deceased and his specific past violent acts are not otherwise relevant to the issues before them.
We can discern no valid distinction as to admissibility between violent acts that the victim directed at the defendant and acts which the victim directed towards identified third persons. The crucial factor is not who was the target of the violence, but that the defendant was aware at the time of the incident of the victim’s past violent behavior.
On the other hand, not all acts of violence committed by the victim in the past are necessarily relevant to the issues presented by a claim of justification. There may be instances where acts are too remote in time or of a greatly different quality than the one which the defendant accuses the victim of committing. In such cases, the trial court may, upon consideration of an offer of proof, decline, in the exercise of its sound discretion, to admit the proof into evidence. (McMorris v State, 58 Wis 2d 144, supra; 1 Wigmore, Evidence [3d ed], § 198.) However, that some acts should properly be excluded does not justify a general rule of exclusion. The appropriate test is whether the acts sought to be proved relate reasonably, in time and quality, to the defense raised by the defendant.
The extent to which prior violent acts may be proved rests also in the discretion of the trial court. We are ever mindful of the danger that the principal issues to be resolved may be lost in an endless maze of collateral matters. Moreover, we share the concern that the progress of a criminal trial may become stalled by evidentiary conflicts over matters of tangential relevance, thereby impeding the expeditious administration of justice. Yet, a basic sense of fairness mandates that the defendant be permitted to substantiate his claim that the victim committed specific violent acts in the past because it enlightens the jury on the state of the defendant’s mind at the time of the difficulty, and thereby enables them to decide whether he acted rationally under the circumstances. By the same token, the prosecution should be given a fair opportunity to dispute the defendant’s contention through presentation of its evidence, as well as by vigorous cross-examination of the *553 defendant and his witnesses. The trial court, having the opportunity to view the witnesses as they testify, may place limitations on the extent that such matters may be proved or disproved in a particular case.
We have previously noted that some States permit the defendant to introduce into evidence the criminal record of the victim. Evidence of a conviction for a violent act is, of course, acceptable documentary evidence that would support the defendant’s contention, provided he was aware of the conviction at the time of the incident. However, the defendant is not thereby authorized to introduce, without limitations, an entire criminal record which may include convictions for petty matters or for crimes that in no sense could be considered violent. Admission of an entire criminal record is, truly, an effort to disparage the victim’s general character and is not probative of the defendant’s apprehensive state of mind. We, therefore, are careful to note that while specific convictions for violent acts may be admissible, provided the defendant had knowledge of same, general proof of the victim’s criminal disposition is not. "The decision in each case as to similar nature and remoteness, however, rests within the sound discretion of the trial judge.” (Commonwealth v Amos, 445 Pa 297, 305, supra.)
In sum, then, we believe that our present rule precluding the admission of prior violent acts of victims in cases where a claim of justification is made should be changed to allow such evidence where it is shown that the defendant was actually aware of such particular acts at the time of the homicide or assault. Applying the new rule to the case before us, we conclude that a new trial is necessary. There is evidence in the record that the defendant killed his sister in the aftermath of a family dispute stimulated by the sister’s extreme aggravation over an asserted theft of money. The principal question of fact before the jury was whether the defendant shot his sister in self-defense, believing to be in imminent danger of an assault by the sister, or whether he shot her deliberately, without justification, after the family dispute had been broken off. Under these circumstances, the jury should be permitted to consider proof that the defendant was aware of his sister’s prior violent attacks upon her mother who, after all, was asserted by the sister to be the thief, and was, thus, the source of her anger. Since this evidence, if believed by the jury, would be probative on the reasonableness of defendant’s *554 apprehension for his own safety, we are compelled to conclude that there is a significant probability that the jury might have credited the defense of justification had it been apprised of the victim’s prior acts of violence. (People v Crimmins, 36 NY2d 230, 242.) We do not, however, imply that at a new trial the court must admit into evidence all the instances which the defense sought to establish at the first trial. We hold simply that, under the newly announced rule, evidence of specific acts of violence committed by deceased should not be excluded if the evidence is relevant and probative to show the state of the defendant’s mind as to the necessity of defending himself. As previously noted, the trial court also has discretion in the extent and in a manner in which the incidents are sought to be proved.
We have examined the other points advanced by the defendant and find that, in no respect, did the courts below fall into error. We reverse not because the courts below failed to properly administer the law, but because we believe the law itself should be changed, and that the defendant is entitled to the benefit of that change.
Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.
Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
Order reversed, etc.

. Similar considerations, of course, obtain in prosecutions for assault. For convenience, we need only make reference to that type of case as is presently before us, homicide.

. An examination of the more recent cases in other American jurisdictions is instructive. California, Pennsylvania, Delaware, Virginia, Texas, Wisconsin, North Carolina and one Federal court permit the introduction of evidence establishing specific violent acts of the victim, provided that the defendant knew of them. (See Cal Evidence Code, § 1103, subd [1]; People v Rowland, 262 Cal App 2d 790, 797; Commonwealth v Amos, 445 Pa 297; Ruffin v State, 50 Del 83 [where defendant was *550 allowed to prove some specific acts, not error to preclude further inquiry into deceased’s criminal record]; Stover v Commonwealth, 211 Va 789, cert den 412 US 953; Wood v State, 486 SW2d 359 [Tex]; McMorris v State, 58 Wis 2d 144; State v Johnson, 270 NC 215; United States v Burks, 470 F2d 432; see, also, Mortimore v State, 24 Wyo 452; Mendez v State, 27 Ariz 82.) Maryland, Missouri, Kentucky, Nebraska, Minnesota, Iowa and Louisiana have adhered to the rule of exclusion. (See Williamson v State, 25 Md App 338; State v Maggitt, 517 SW2d 105; Johnson v Commonwealth, 477 SW2d 159 [Ky]; State v Kimbrough, 173 Neb 873; State v Keaton, 258 Minn 359; State v Rhone, 223 Iowa 1221; People v Singleton, 311 So 2d 881 [La].) Several jurisdictions have adopted a middle ground, permitting the introduction of evidence relating to specific violent acts directed at the defendant, but excluding evidence of acts directed at third persons. (See People v Davis, 29 Ill 2d 127; People v Farrell, 137 Mich 127; Henley v State, 520 SW2d 361 [Tenn]; Chaffin v State, 209 Tenn 590.)