■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MELIA HAZEN, Appellant. — Judgment, Supreme Court, New York County, rendered July 5, 1979, convicting defendant, upon his plea of guilty, of manslaughter, first degree, and sentencing him to an indeterminate term of 10 years, modified as a matter of discretion in the interest of justice to reduce the sentence to an indeterminate term of three years, and, as so modified, the judgment is affirmed. We find the sentence excessive to the extent indicated. The minutes of the plea proceeding are accurately stated in the dissenting opinion, as are the background facts with one telling exception. The dissent suggests that it was only a claim of the District Attorney that the last two shots were fired in the street and states that whether they were fatal shots is open to speculation. Actually, the defendant acknowledged: "that the last shots were fired when Mr. Kruglak was out in the street. And he was not armed. And that those bullets contributed to killing him"; "that they are going to have a witness, if they had a trial, who would say that after you shot him, he run out of the store, and you shot him again". The court accepted this acknowledgment and did not, unlike *People v Serrano* (15 NY2d 304) cited by the dissent, disregard or contradict the defendant's version. Unlike *People v Patterson* (21 AD2d 356), relied upon by the dissent, where the evidence was so scant that the jury had to speculate whether the defendant was an initial aggressor, a subsequent aggressor or a self-defending victim, the defendant's concession of facts here established his guilt of the crime to which he pleaded. The defendant was indicted for murder and he freely and knowingly elected to plead guilty to manslaughter. No exceptions were taken to the plea nor were any motions made to set it aside. We find no reason to exercise our discretion in the interest of justice to annul it. Difficulty has arisen only because the defendant constantly reiterated a belief in justification or self-defense that he had formulated in his own mind — that he should be absolved of responsibility for shooting an unarmed man five times solely because the victim had been the original aggressor. But the persuasive factor is that, having said this, he refused to go to trial on this defense, even though it was at least twice suggested to him by the court. He wanted to put an end to the matter. He acknowledged that he was guilty of manslaughter. We find it implicit in the minutes of the plea proceeding that the defendant insisted upon accepting the advice of his counsel, whose competence has never been challenged, rather than chance his own theory of defense. We find it also implicit that the defendant was willing to accept the court's explanation of the law of justification, which, given the acknowledged facts, was not erroneous (see Penal Law, § 35.15, subds 1, 2). Concur — Kupferman, J. P., Sandler and Lynch, JJ.

Birns and Fein, JJ., dissent in a memorandum by Birns, J., as follows: I dissent. The appellant's plea of guilty to the crime of manslaughter in the first degree should be vacated, the judgment of conviction reversed and the matter remanded to the Supreme Court, New York County, for further proceedings in accordance with the Criminal Procedure Law. The majority holds that appellant's plea was voluntary; that it was knowingly and intelligently made. A careful appraisal of the facts shows that this conclusion is unwarranted. Appellant, a Russian emigré, was charged with the crime of murder in the second degree. He shot and killed the deceased during a dispute which originated in appellant's clothing store on Orchard Street. From the briefs we learn a financial relationship had existed between deceased and appellant for four years. At first, the deceased had loaned appellant sums of money at exorbitant rates of interest. Thereafter, the deceased and appellant were partners in some business enterprise. Shortly before the killing, the deceased, and on occasions the deceased's wife, had demanded payment on two undated

checks which were claimed to be evidence of prior loans to appellant of $10,000. The appellant contended these sums had been repaid. For a period of 10 days prior to the shooting on March 23, 1978, appellant and his family were subjected to telephone calls at their store and their home in the middle of the night; telephone calls in which, according to a witness, the deceased threatened to kill members of the appellant's family. On March 23, 1978, the deceased entered appellant's store with a revolver in his waistband. After some words the deceased drew the weapon and aimed it at appellant. Appellant seized the weapon, managed to secure it and shot the deceased, who collapsed and died in the street in front of the store. The autopsy report showed five shots were fired. The District Attorney claims that the last two shots were fired in the street. Whether they were the fatal shots is open to speculation. Appellant maintains he has no recollection of shots being fired in the street. It appears that at that time the appellant's wife and young children were standing in front of the store. At the time of the plea, and again at sentence, appellant, aided by an interpreter, asserted repeatedly that he fired the shots in self-defense. Despite that claim, the plea was accepted and the court imposed an indeterminate sentence not to exceed 10 years. Appellant had no prior record. The following colloquy has been excerted from the stenographic transcript of the plea: "THE COURT: ... Mr. Hazen, will you please, through the Interpreter, tell me what Mr. Rosenthal just said so I know you understand. THE DEFENDANT: Yes. THE COURT: Tell me what he said. THE DEFENDANT: He said that he knows that Mr. Rosenthal [defense counsel] said about him that he is guilty of the crime, but, he says, he wasn't asked how it was happened. THE COURT: But what Mr. Rosenthal says is that you want to plead guilty to manslaughter in the first degree. THE DEFENDANT: Yes. THE COURT: You plead guilty, you are not going to have a trial. That means: that nobody will hear any witnesses in your case. And neither you nor the People who are accusing you are going to be here in court. That will be the end of the case. THE DEFENDANT: Let's put an end. THE COURT: It also means that when you plead guilty you are admitting that on March 23 of last year you shot Zinobi Kruglak, and that at the time you shot him you intended to cause him a serious physical injury, and he died as a result of that shooting. When you plead guilty you are admitting that; you understand that? THE DEFENDANT: I defended myself. I didn't want to kill him. THE COURT: If you defended yourself, then you have to go to trial. Because, when you plead guilty, you are admitting that you had no legal right or justification for shooting him. Do you understand that? If you want to claim that you were defending yourself then you are going to have to go to trial and prove that at the trial. But, if you plead guilty, that is not what you are doing — MR. ROSENTHAL: Judge, I think this conversation can be developed. There came a point where he shot him more than three times. He shot him twice after. THE COURT: There were five shots fired. I understand all that. But that is not what the defendant is now asserting. He is asserting, in essence, if I understand him, that there was a justification that made it appropriate that he shoot the deceased in this case. MR. ROSENTHAL: Well, there may have been in the beginning, but it went further than that. THE COURT: Well, then, he better explain that to me. THE DEFENDANT: I defended myself. I was trying for over a year to bring this point across to the Judge. THE COURT: Well, the way you bring it across is to have a trial then. When you finally shot the deceased, how many times did you shoot him? THE DEFENDANT: I don't remember. I was told it was about five times. THE COURT: Is there any question in your mind that Mr. Rosenthal has an autopsy report that shows that he was shot five times? Did Mr. Rosenthal tell you that? THE DEFENDANT: Yes. THE COURT: And, when you fired the last three shots, where was the deceased? THE DEFENDANT: I don't

know. I was told he was at the street. THE COURT: Do you have any reason to doubt that that's true? THE DEFENDANT: The documents from the Police, I trust them. THE COURT: You understand that when the Police would testify at the trial, they would testify that the last shots were fired when Mr. Kruglak was out in the street. And, he was not armed. And, that those bullets contributed to killing him. THE DEFENDANT: I trust that this is correct. THE COURT: And, you know that that means that you had no legal right or justification to shoot him when he — even if you had a fight with him before. THE DEFENDANT: I am ready to pay for my guilt. THE COURT: Then you are admitting that you are guilty of that crime then? THE DEFENDANT: I did this crime only to defend myself. THE COURT: Here we go. I am not going to take that plea, Mr. Rosenthal; I will tell you that right now. (Whereupon Counsel and defendant confer at Bar.) THE DEFENDANT: He came to my business. He started to strangle me. A few times he took out his revolver. I took his revolver and I fired at him. THE COURT: Did he have a gun when you fired the first shot? THE DEFENDANT: I fired at him with his pistolette. THE COURT: But when you fired at him he did not have a gun, did he? THE DEFENDANT: I took his gun. THE COURT: That was the only gun there was? THE DEFENDANT: One. THE COURT: And, after you took it away from him you had his gun and you shot him? THE DEFENDANT: Yes. THE COURT: And, you know that they are going to have a witness, if they had a trial, who would say that after you shot him, he run out of the store, and you shot him again. You understand that? MR. ROSENTHAL: Twice. THE DEFENDANT: I don't say that that's not true. I don't want to lie. I don't know exactly what happened with me at that particular moment. THE COURT: All right, accept the plea. Mr. Hazen, one other thing: Did Mr. Rosenthal discuss with you what the sentence is going to be in this case? THE DEFENDANT: Yes, he has. Asking the Court to be lenient. He has two children — he has never committed any crime." After interrogating appellant as to his knowledge that an indeterminate sentence not to exceed 10 years had been negotiated, the court asked: "Do you want to plead guilty after what is just said? THE DEFENDANT: Yes, I'm guilty, but again I want to say: that he came to kill me." The plea minutes continue: "THE CLERK: Do you now withdraw your previously entered plea of not guilty? — the defendant: I say: I am guilty. THE CLERK: — on Indictment No. 1879 of 1978, and do you now plead guilty to the crime of manslaughter in the first degree under the first count of that indictment. THE DEFENDANT: I say that I am guilty, but I wasn't guilty because I was defending myself. I am guilty. I would like to know how I am guilty. Why am I guilty if I wanted to defend myself. THE COURT: All right, Mr. Hazen, the reason that you are guilty is that you have no right — I want you to understand that — under the law of this State to shoot an unarmed man. You may think that you had a right to defend yourself but under the law the minute you took the gun away — the other man had it — he was unarmed, and you had a gun. And, you have no legal right to use deadly force against an unarmed man. So you only can defend yourself if he has a chance to kill you. You can have a chance to kill him, but if you took his gun away, you had no right to shoot him: that is what the law says. If you want to accept that principle, then you have no justification for shooting him, and you were not defending yourself legally. And, if you want to try and let a Jury decide that, you still have a right to do that, you understand what I am saying now? THE DEFENDANT: Because he came to the store to attack me, but, nevertheless, I am guilty. THE COURT: All right, take the plea. THE CLERK: Melia Hazen, is Mr. Rosenthal in court your Attorney? THE DEFENDANT: Yes. THE CLERK: Do you now withdraw your previously entered plea of not guilty on Indictment No. 1879 of 1978, and do you now plead guilty to the crime of manslaughter in the first degree? THE DEFENDANT: I said before that I am guilty, and I said it now

that I'm guilty. The only fact is why. I ask the Court, could the Court see to it why did I do it? THE COURT: Go ahead. Take the plea." It should be obvious that appellant's plea was not intelligently and knowingly made *(People v Selikoff,* 35 NY2d 227). The plea followed an erroneous statement of law by the court, a statement of such import that the plea could not thereafter represent appellant's "unfettered choice" to plead to manslaughter in the first degree rather than to go to trial on the murder charge *(People v La Ruffa,* 34 NY2d 242, 246). In the first place, appellant was told by the court that police testimony would show "the last shots were fired when Mr. Kruglak was out in the street. And, he was not armed. And, that those bullets contributed to killing him * * * And, you know that that means that you had no legal right or justification to shoot him when he — even if you had a fight with him before." Again, in the continuing colloquy (after the court first refused to take the plea), the court, answering appellant's question, "why am I guilty if I wanted to defend myself", said: "you have no right — I want you to understand that — under the law of this State to shoot an unarmed man * * * under the law the minute you took the gun away * * * he was unarmed * * * And you have no legal right to use deadly force against an unarmed man * * * you can only defend yourself if he has a chance to kill you. You can have a chance to kill him, but if you took his gun away, you had no right to shoot him: that is what the law says." I respectfully submit that the statements by the trial court, which have surface appeal, do not accurately reflect New York law. Certainly, when a victim becomes an aggressor the law requires accountability (Penal Law, § 35.15). However, the line between victim and aggressor is not always clear because of the nature of the event under consideration. Whether a defendant is a victim or an aggressor cannot be determined by a view from the Bench based solely on repeatedly qualified statements from a defendant and without careful analysis of all the surrounding circumstances. Not only must the determination rest upon such an analysis but also upon an appraisal of the defendant, namely how he reasonably perceived the circumstances enveloping him which provoked the conduct resulting in his indictment *(People v Miller,* 39 NY2d 543, 548). "[I]nstead of rejecting the change of plea or advising the defendant that his admissions might very well not amount to the crime to which he pleaded guilty and inquiring further whether he, nevertheless, wished to plead guilty — for instance, to avoid the risk of a jury verdict of first degree murder — the trial judge took it upon himself to resolve" certain aspects of the defendant's version of the events in a manner contrary to the interest of defendant *(People v Serrano,* 15 NY2d 304, 308). In *Serrano (supra),* the Trial Judge in effect took it upon himself to "decide that defendant was not subject to belief." In a similar vein, in the case at bar, the Judge improperly determined that certain aspects of defendant's version of events could be disregarded or were unworthy of belief or consideration. The court below ignored appellant's version of the rapid flow of events which led to the transfer of the pistol from the possession of the deceased to the hands of the appellant and the circumstances in which that transfer occurred. Threats were made by the deceased to the appellant inside the store; the deceased tried to strangle appellant, then displayed a weapon which the appellant successfully seized. Shots were fired. Mr. Kruglak managed to leave the store where appellant's wife and children, who had been threatened previously, were standing. This court, in an appeal from a conviction for manslaughter in the first degree in another case, had occasion to evaluate a defendant's claim of self-defense which had been placed before a jury. In that case the defendant admitted shooting the decedent and claimed his act was in self-defense. There the defendant seized a gun from the decedent, struggled for its possession, and fired a number of shots, felling the decedent.

After the decedent was on the ground, he fired two more shots into decedent's body. Speaking for a unanimous Appellate Division, Justice Breitel (later Chief Judge of the Court of Appeals) set forth the applicable law in these terms: "In short, defendant's guilt has been established by speculation, speculation because the inference is not supported by sufficient probability to sustain a finding that defendant * * * subsequently became, an aggressor rather than a self-defending victim of an attack with a deadly weapon. To be sure, one might gamble that defendant probably used excessive force and perhaps even, and this is required too before he may be found guilty, beyond the time when he was still in reasonable belief that he was in peril from decedent's attack. This is not the stuff upon which a man's liberty should be taken from him. Moreover, a person subjected to a felonious assault in his abode is not expected to engage in a detached analysis of the probabilities,[1] and may destroy 'the person making the felonious attack' *(People v. Ligouri,* 284 N.Y. 309, 317 [nine shots into the body of armed assailant]; *People v. Tomlins,* 213 N.Y. 240, 242-244; 40 C.J.S., Homicide, § 131). So, too, if excessive force is used in self-defense, it must be shown that it was the excessive portion of the force which resulted in death *(People v. Taylor,* 92 App. Div. 29, 32-33)." *(People v Patterson,* 21 AD2d 356, 361.) Although the *Patterson* case *(supra)* was tried in 1964, it is not at odds with our present statute pertaining to self-defense (Penal Law, § 35.15). (See *People v Miller, supra.)* Moreover, if in the circumstances at bar the defendant reasonably perceived not only himself but his family to be in danger from the continuing use by Mr. Kruglak of deadly physical force, the law would permit the defendant to interpose a claim of self-defense, even if the fatal shots occurred in the street (Penal Law, § 35.15; *People v Miller, supra; People v Gaimari,* 176 NY 84, 95; Richardson, Evidence [10th ed], § 15). I cannot accept the majority's view that appellant chose freely to surrender his claim to self-defense. It is apparent that he relied upon the court's statement that the claim could not be supported at law. Not only was it error for the court to misstate the law, but it was improper for the court to make factual determinations to the detriment of the defendant. Where defendant chooses to surrender his right to interpose a defense of self-defense, it should not be open to question that the surrender of that claim was the result of a free choice of the defendant and not a reluctant acquiescence in the legal view of the case espoused by the Judge. Many times during the pleading procedure, and again at sentence, the defendant contended that he acted in self-defense.[2] The Second Department, in *People v Monk* (59 AD2d 915, 916), tracking *Serrano (supra),* observed: "Where, as in the case at bar, the court, at the plea hearing, elicits information from the defendant which casts doubt upon his guilt of the crime to which he is pleading, the court should not proceed to accept the guilty plea without further inquiry".[3] Although the

[1] See Holmes, J., in *Brown v United States* (256 US 335, 343), "Detached reflection cannot be demanded in the presence of an upraised knife."

[2] This court recently affirmed the conviction in *People v Colon* (77 AD2d 370), notwithstanding the fact that at the plea there had been a claim of self-defense. *Colon (supra)* is distinguishable from the case at bar because in *Colon* it was apparent that the defendant relinquished voluntarily his claim of self-defense. It was not apparent that his plea of guilty in any way was coerced or induced by a misstatement of law by the court. In addition, it was assumed that if Colon went to trial he assuredly would have been convicted of possession of a weapon in the third degree (because he himself was armed before the encounter with the deceased), and that he would have received a sentence corresponding to the sentence he elected to receive upon his plea of guilty to the crime of manslaughter in the second degree.

[3] I do not disregard the possibility that defendant was counseled to plead guilty to manslaughter in the first degree to avoid the possibility of conviction for murder in the second degree (see *People v Serrano, supra; People v Monk, supra)* but this factor is not a point raised on this appeal or reflected in the record.

trial court at first refused to accept the plea, its subsequent inquiry did nothing to dispel doubt of defendant's guilt of the crime to which he was pleading. One final observation. There was a manifest infirmity in this plea. Indeed, it is an exercise requiring the utmost care to accept a plea from a defendant bearing in mind the legal strictures which come into play *(People v Nixon,* 21 NY2d 338). Even more difficult is the task when a pleading defendant has no facility in the use of the English language and needs the assistance of an interpreter. Appellant was unable to speak English and the court utilized a Russian interpreter. Appellant's responses to the court's questions, as is evident, are recorded not only in the first person singular but in the third person singular. Thus the court had the interpreter's sense of what the appellant said as well as the interpreter's effort to convey the appellant's own words into English. This melange obviously diminished the import of the appellant's statements.[4] *(People v Serrano, supra,* p 310). As I have said, the defendant continually protested that his act was in self-defense — even at sentence. In these circumstances we may overlook the fact that there was below no motion to withdraw the plea of guilty (cf. *People v Serrano, supra).* Therefore, as a matter of discretion in the interest of justice (CPL 470.15, subd 3, par [c]) we should vacate the plea, reverse the conviction and remand the case for further proceedings in accordance with law (cf. *People v Hernandez,* 78 AD2d 816). I am authorized to state that Justice Fein joins in this opinion.