■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES TRIVETTE, Appellant.—Mikoll, J. P. Appeal from a judgment of the County Court of Clinton County (McGill, J.), rendered November 22, 1989, upon a verdict convicting defendant of the crime of criminally negligent homicide.

Defendant contends on this appeal that County Court committed reversible error in precluding the defense from introducing certain evidence, including testimony and medical records, relating to decedent's psychiatric history which purportedly would show decedent's past bizarre and aggressive behavior. We disagree. The judgment of conviction should be affirmed.

In the early morning hours of December 25, 1988 decedent, Michael Sullivan, was involved in a fatal confrontation that resulted in the discharge of a shotgun in the hands of defendant. At the time of this incident, defendant and his then girlfriend, Kimberly Anderson, were residents of the same motel as decedent. Defendant and Anderson resided in room 25 and decedent lived in the room next door, room 23. Defendant testified that he met decedent for the first time four or five days prior to December 25, 1988, when decedent came to defendant's door asking for cigarettes. Defendant stated that he also heard decedent swearing at the maids, yelling over the phone and, from the hallway, had observed "dirty books and pictures" in decedent's room. Further, defendant said that one day decedent followed him to work after lunch and was "very hyper" and "very loud". Anderson related to defendant that the motel maids said that decedent acted strangely around them. Defendant testified at trial that, based on the above, he became a "little leery" and a "little suspicious" of decedent.

On the morning of the fatal altercation, defendant and Anderson returned to their motel room between 2:00 A.M. and 3:00 A.M. on December 25, 1988. While defendant was in the bathroom, decedent came to the door and asked Anderson if he could borrow some coffee. Anderson followed decedent back to his room with the coffee. She testified that upon entering the room, decedent slammed the door shut behind her, said that "she was a pretty little bitch and that he was going to enjoy his Christmas", and then pulled open the country western shirt that she was wearing. Anderson cried out and defendant, hearing her cries, went next door to decedent's room. Defendant found that the door was locked and decedent did not respond to defendant's knocking. Defendant then went to his room and returned with a loaded double-barreled shotgun.

According to defendant, decedent opened the door after defendant's further demands and defendant pointed his shotgun at decedent, backing him into the room so that Anderson could move toward the door. Defendant then yelled at decedent, warning him to leave them alone, and stated that decedent had a "wild look on his face" and "looked like he was ready to attack". Defendant asked if decedent understood him but received no reply. Defendant asked again and decedent responded "yeah", making a quick, sudden movement toward defendant, allegedly hitting the shotgun with his hand and causing it to discharge. Decedent was struck in the midsection and died. Shortly thereafter, local police officers came to the motel in response to an apparent call regarding a disturbance. Anderson advised them that she had been arguing with defendant but that everything was fine. The police left. Anderson and defendant then gathered their belongings and fled to relatives in Tennessee where they were arrested the next day.

At the trial before a jury, defendant sought to introduce certain medical records and testimony showing decedent's alleged past psychiatric history and treatment, including treatment only 10 days prior to the fatal confrontation with defendant. County Court received an offer of proof but declined to allow the proffered records and testimony into evidence. A jury convicted defendant of criminally negligent homicide, a lesser offense to the original charge of second degree manslaughter. Defendant was sentenced to an indeterminate term of imprisonment of 1⅓ to 4 years. This appeal ensued.

County Court properly ruled that the proffered testimony and medical records concerning decedent's lengthy psychiatric history were not admissible at defendant's trial. The law in New York is well settled that: "[A] defendant, in a prosecution for homicide, may introduce evidence that the deceased had a reputation as a 'quarrelsome, vindictive or violent' person, provided that the defendant was aware of this reputation at the time of the incident. * * * 'The character of the deceased with reference to violence, when known to the accused, enables him to judge of the danger and aids the jury in deciding whether he acted in good faith and upon the honest belief that his life was in peril. It shows the state of his mind as to the necessity of defending himself.' " *(People v Miller,* 39 NY2d 543, 548-549 [citations omitted]; *see also, People v Owens,* 158 AD2d 478; *People v Hutchinson,* 141 AD2d 762, 763.) Defendant was unaware of decedent's psychiatric history at

the time of the confrontation and such unknown information could not have affected defendant's state of mind at that time. Defendant and Anderson described to the jury decedent's behavior at the times they saw him and their impression of him. This testimony was useful to show defendant's state of mind at the time in question and was admissible for that purpose (see, People v Miller, supra, at 549).

Defendant argues that the principles enunciated in People v Miller (supra) are not applicable here, and that the precluded evidence should have been received because the medical records and testimony indicate that decedent had an illness "which caused him to behave in a certain manner which gave rise to defendant's fears of harm to his girlfriend and gave rise to specific acts of bizarre behavior which ultimately led to the decedent's death". The weakness of this argument is that defendant did not know of the illness and the medical history information. Thus, it could not have affected his state of mind. The bizarre behavior of decedent and its effect on defendant's mental state was sufficiently before the jury to enable them to adequately consider the issue of self-defense. Thus, the evidence of decedent's psychiatric history would have been cumulative and its exclusion does not give rise to reversible error (see, People v Dupigney, 156 AD2d 709; People v Rivera, 101 AD2d 981, 981-982, affd 65 NY2d 661).

Defendant's contention that County Court erroneously denied him access to certain medical records that it reviewed in camera is not persuasive. The information in the records viewed in camera was not known to defendant before the confrontation and is not admissible (see, People v Miller, supra).

Yesawich Jr., Mercure, Crew III and Harvey, JJ., concur. Ordered that the judgment is affirmed, and matter remitted to the County Court of Clinton County for further proceedings pursuant to CPL 460.50 (5).