[644 NYS2d 508]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HER-
MAN CHEVALIER, Appellant.

First Department, June 25, 1996

## APPEARANCES OF COUNSEL

*Ellen Dille* of counsel, New York City *(Philip L. Weinstein,* attorney), for appellant.

*James P. Kane* of counsel, New York City *(Robert M. Raciti* on the brief; *Robert M. Morgenthau, District Attorney* of New York County, attorney), for respondent.

### OPINION OF THE COURT

MURPHY, P. J.

Shortly after midnight on April 11, 1987, defendant Herman Chevalier and a group of friends were involved in a fight with Lionel Davis, Alfredo Davis, Fausto Contreras and Hermillion Guillen outside a bodega on Amsterdam Avenue and 164th Street. According to defendant's version of events, the altercation began when Lionel Davis, who appeared to be "feeling good" and consumed a can of beer in defendant's presence, grew angry at defendant's suggestion that he purchase and share additional beer. Words turned to blows and, after extensive fisticuffs, Lionel Davis's friends pulled him into a nearby car and drove away. At that time, Davis, who was "acting crazy", threatened to return and "get" defendant. Immediately after the fight, defendant learned from an acquaintance that Davis, whom he had not met before this incident, was dangerous and should be avoided. Nevertheless, defendant remained in the area. Approximately 30 minutes later, Guillen suddenly appeared beside the defendant and threatened him with a pistol, which defendant wrestled away. At that instant, defendant saw Lionel Davis running towards him, brandishing another pistol. Fearing for his personal safety, defendant shot Davis twice with Guillen's gun. Thereafter, defendant saw Contreras pointing yet another gun at him. Defendant shot Contreras, dropped Guillen's gun, and ran home. Believing

that these men would seek revenge against him, defendant subsequently left New York City and moved to Florida.

Lionel Davis died from his wounds at the scene of this incident; a toxicological report from an autopsy performed upon Davis revealed the presence of cocaine, cannabis and alcohol in his body at the time of death. Contreras was hospitalized with a chest wound and later underwent surgery.

In May 1991, defendant was arrested in Florida and charged with the homicide of Lionel Davis and related crimes arising from the April 1987 incident.

At trial, defendant presented a justification defense, arguing that he had shot Davis and Contreras while in fear for his own safety. When the defense sought to present the contents of the toxicological report in support of this justification defense, the prosecution demurred, arguing that defendant had introduced no evidence that he was aware of Davis's drug use at the time of the shooting. The court concurred with the prosecution's view, and rejected the defendant's effort to present testimony as to the use and possible effects of cocaine and cannabis indicated in the toxicological report.

Following trial and deliberations, the jury found defendant guilty of second degree murder and criminal possession of a weapon in the second degree vis-à-vis Contreras, and criminal possession of a weapon in the third degree. It found defendant not guilty of attempted murder or first degree assault of Contreras, and not guilty of criminal possession of a weapon in the second degree vis-à-vis Guillen. Defendant was sentenced to 18 years to life imprisonment, with two concurrent terms of 5 to 15 years and one concurrent term of $2^1/_3$ to 7 years.

On appeal, defendant has argued that the trial court committed reversible error in failing to permit the introduction of the evidence of cocaine in the victim's body at the time of death. The People, in turn, contend that such evidence is not material to the defendant's justification defense because it fails to address the state of mind of the defendant at the time of the incident.

In our judgment, the defendant's view must prevail. It is well established that the justification defense requires a showing both that the defendant acted under a subjective impression of danger and that this impression was objectively reasonable under the circumstances perceived by the defendant. (*People v Goetz*, 68 NY2d 96 [1986].) Critical to this latter point

is a demonstration that Davis was exhibiting aberrant behavior sufficient to cause fear and to warrant a forceful response. Since Davis's recent drug use was a potentially powerful objective causal factor of his purportedly "crazy" conduct, and since a person under the influence of both alcohol and drugs might well be perceived—even by an observer unaware of the cause of the conduct—as acting more dangerously than one who had merely been drinking, the evidence of Davis's drug use was admissible and relevant to the justification defense.

Indeed, exclusion of such evidence seriously handicapped the defense in this matter. The trial transcript reflects testimony by a Medical Examiner, reviewing the toxicological report, that the victim's blood bore a .18% alcohol content. No doubt seeking to undercut defendant's justification argument, the prosecutor elicited an opinion from the Medical Examiner, based on this alcohol measure, that the victim was only "a bit intoxicated" at the time of the incident. Although the toxicological report also described evidence of contemporaneous cannabis and cocaine use by Davis, arguably a potent factor in the victim's "crazy" behavior, the defense was permitted neither to introduce such evidence nor to discuss its implications for the victim's actions. Without this testimony, the jury was left to assess the credibility of the defendant's description of the victim's conduct and his fears for safety in light of the Medical Examiner's highly misleading conclusion that the victim was only marginally intoxicated at the time of death. This problem was compounded by the prosecutor's somewhat disingenuous statement at closing argument that the defendant's version of fact and justification defense was "based on speculation, unsupported by any other evidence[,] other than defendant's testimony alone", and that there was "no other physical evidence, no other medical evidence to support anything the defendant said on that witness stand."

This was no trivial error. During the course of its deliberations the jury requested reinstruction on the law of justification, sought rereading of the Medical Examiner's testimony for the prosecution, and found defendant innocent of the attempted murder and assault charges arising from defendant's shooting of Contreras. Under these circumstances, we cannot say that the erroneous exclusion of evidence tending to bolster the credibility of defendant's account of Davis's purportedly aggressive behavior was harmless.

Finally, we see no legal barrier to the introduction of the evidence of contemporaneous drug usage to support a justifica-

tion defense where a defendant, though ignorant of drug use, reports crazed behavior consistent with such evidence. The report of the victim's physical condition at the time of death bears little resemblance to the character or reputation evidence at issue in *People v Miller* (39 NY2d 543 [1976]) and its progeny, and is far more scientifically reliable as a basis for gauging the victim's behavior at the time of the incident. The evidence of the victim's drug use is qualitatively distinct from the evidence of alcohol use, and did not merely duplicate evidence already presented to the jury. *(Cf., People v Dean,* 162 AD2d 699 [2d Dept 1990], *lv denied* 76 NY2d 855.) Most significantly, the purpose of the introduction of the toxicological report in this case—to enhance the objective description of the victim's behavior so as to better judge the reasonableness of the defendant's conduct—was highly relevant to the justification defense, particularly in light of the prosecution's misleading use of the report.

Accordingly, the judgment of the Supreme Court, New York County (Renee White, J.), rendered May 3, 1993, convicting defendant of murder in the second degree, two counts of criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree, and sentencing him to concurrent terms of from 18 years to life, two terms of from 5 to 15 years, and one term of from $2^1/_3$ to 7 years, respectively, should be reversed, on the law, and the matter remanded for a new trial.

TOM, J. (dissenting). I respectfully dissent and vote to affirm the judgment of the Supreme Court.

There is no dispute that at approximately 1:00 A.M. on April 11, 1987, defendant and several of his friends engaged in a fist fight with Lionel Davis (Davis), Alfredo Davis, Fausto Contreras and Hermillion Guillen outside 2091 Amsterdam Avenue (which is located between 163rd and 164th Streets), New York, New York. Once the fight ended, defendant and his friends ran away, while Davis and his friends proceeded to a bar approximately 20 blocks away.

Davis subsequently realized that he had lost some personal items at the scene of the incident, so he and his friends hailed a cab and returned. It is at this juncture that the prosecution and defense cases diverge. The People's witnesses maintained that as Davis exited the cab and walked across the street toward the location of the incident, defendant appeared from inside a building, grabbed a revolver from his waistband and

pointed it at Davis. Davis is alleged to have raised his hands, which were empty, and to have stated "If you want to kill me, kill me", at which point defendant opened fire, hitting Davis in the stomach and face, killing him. Defendant also shot Contreras in the right side and shot at, but missed, Guillen.

Defendant maintains, as set forth by the majority, that when Davis and his friends returned, Guillen shoved him and pulled a black revolver from his waistband. Defendant then allegedly wrested the gun from Guillen, at which point Davis pulled out a gun and started running toward defendant. Defendant, purportedly afraid for his life, shot Davis twice as he charged toward him and then shot Contreras, who was also approaching with a gun in his hand.

During the course of the trial, the court denied defendant's request to present autopsy evidence that revealed that Davis' body contained cocaine and cannabis. Defendant maintains that such ruling was in error since the exclusion severely curtailed defendant's ability to develop the defense of justification. Defendant further argues that this error was compounded by the prosecutor's summation that the defense case of justification was "uncorroborated by any evidence other than [defendant's] testimony." I disagree.

During the presentation of the People's case, Contreras and Guillen testified that they were at a party with Davis the night of the incident, which was being held on the occasion of Davis' birthday. Guillen averred that he did not see Davis use cocaine that night, but was aware that he was intoxicated. In fact, none of the People's witnesses testified that they observed Davis using drugs, but they all testified that he drank beer. This was corroborated by defendant, who stated that he saw Davis "gulp down" one bottle of beer and that Davis was "feeling good." Defendant also stated that at the end of the fight, Davis cursed, screamed and "act[ed] crazy," but never testified that he was aware Davis was using drugs.

It is well settled that every defendant has a constitutional right to present evidence and witnesses in his/her defense (*Chambers v Mississippi*, 410 US 284, 302; *People v Foy*, 32 NY2d 473, 478). However, it is equally well settled that the trial court has broad discretion to curtail the exploration of collateral matters (*People v Hudy*, 73 NY2d 40, 56-57). In a claim of justification, the state of mind of the defendant is the crucial fact to be considered. Thus, in *People v Reynoso* (73 NY2d 816), a case also involving the defense of justification, the Court of Appeals succinctly stated: "[D]efendant takes is-

sue with trial court's exclusion of evidence concerning * * * the presence of a controlled substance in the victim's body. *Since there is no indication in the record that defendant knew that the victim was acting under the influence of drugs * * * this evidence was properly excluded. (Supra, at 819 [emphasis added], citing People v Miller, 39 NY2d 543; People v Nickerson, 175 AD2d 74, 77; see also, People v Pittman, 187 AD2d 679, lv denied 81 NY2d 845.)*

Since there is nothing in the record before us to indicate that defendant was aware that the decedent was under the influence of drugs at the time of the incident, it could not have influenced defendant's state of mind at that time and, therefore, it was immaterial to defendant's justification defense. Further, the jury was well aware that the decedent had been drinking that night through the testimony of Guillen and Contreras, as well as defendant, and defendant's testimony regarding decedent's behavior was sufficient to not only apprise the jury of his impression of him, but was also useful to show defendant's state of mind at the time in question (*People v Trivette*, 175 AD2d 330, 332).

With regard to the summations, defendant concluded his summation by stating: "We know [Davis] was drunk with alcohol. We know one [witness] was arrested and plead *[sic]* guilty to selling drugs and we know he was carrying a beeper that night and we know he was arrested a few months later. That is the type of people you have in this case and you have to take their word of what actually happened and there were many things in their statements that show you it may not have happened the way they said it happened."

The prosecutor responded by stating: "The defense case is based on speculation, unsupported by any other evidence other than defendant's testimony alone. The entire case is built on speculation, on character assassination, it is uncorroborated and unsupported by any other evidence, any evidence other than the defendant's naked testimony."

Since a prosecutor's comments must be weighed in relation to the defense summation remarks to which they replied (*People v Marks*, 6 NY2d 67, 77-78, *cert denied* 362 US 912; *People v Boddie*, — AD2d —, —, 1996 NY Slip Op 02839 [1st Dept, Apr. 2, 1996]), I find that the prosecutor's summation was both fair and responsive to that of the defendant (*People v Mercado*, 197 AD2d 470; *People v Rodriguez*, 159 AD2d 356, *lv denied* 76 NY2d 795).

Indeed, defense counsel suggested in his summation that Guillen, Contreras and Davis had returned to the scene in or-

der to injure defendant and not to recover personal items, the latter of which was a fabrication; that Guillen had been arrested for selling crack and that all three individuals were suspects with regard to the use of illegal narcotics; that Guillen, a convicted drug dealer, and Davis, a drunk, were not trustworthy; and that the People's witnesses' version of the events was, alternatively, unreasonable, "the most ridiculous thing I have heard," and did not "ring true". It was these comments concerning the character of the People's witnesses that the prosecutor attempted to counter when he responded that defense counsel's assertions were based on speculation, unsupported insinuations and the testimony of defendant's only witness, himself. Further, the prosecutor was entitled to answer defense counsel's remarks that the decedent had to be a suspect when it came to drugs, as there was no evidence admitted regarding decedent's use of drugs that evening.

RUBIN and ROSS, JJ., concur with MURPHY, P. J.; SULLIVAN and TOM, JJ., dissent in a separate opinion by TOM, J.

Judgment, Supreme Court, New York County, rendered May 3, 1993, reversed, on the law, and the matter remanded for a new trial.