THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JULIO RIVERA, Appellant.

First Department, June 23, 1988

**APPEARANCES OF COUNSEL**

*Doreen Klein* of counsel *(Phyllis A. Monroe* with her on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

*David P. Greenberg* of counsel *(David A. Crow* with him on the brief; *Philip L. Weinstein,* attorney), for appellant.

**OPINION OF THE COURT**

SMITH, J.

This is an appeal from a judgment convicting defendant of the crime of manslaughter in the first degree and sentencing him to an indeterminate term of 8⅓ to 25 years in prison. Because of two errors made by the trial court, we reverse and remand for a new trial.

First, a charge on justification, including justification in defense of third persons, should have been given in view of the conduct which the deceased exhibited toward the defendant and his family. Second, the trial court denied defendant's request to obtain the deceased's psychiatric records. Those records reveal that the deceased was a man with a history of mental illness and drug addiction who was found by psychiatrists to be a danger to others, who had a history of assaultive behavior towards others and who reportedly had 17 criminal convictions. But for these omissions, the result of the trial could reasonably have been different.

The conviction resulted from a January 13, 1986 confrontation between the deceased, Ralph Ruiz, and defendant. Ruiz lived in the apartment next door to defendant and his family, at 112 East 103rd Street, New York County. Shortly after moving there, Ruiz engaged in a campaign of harassment against defendant and his family. The motive for this behavior appeared to be his sexual attraction to Theresa Castro, defendant's common-law wife. The deceased's acts of harassment, over a 2½-year period, included displaying a knife to Ms. Castro, threatening to kill her and her son, drilling a peephole through the bathroom wall to view Ms. Castro, and making obscene remarks over the telephone and through the apartment walls. Ruiz also threatened defendant's life on several occasions, at times displaying a knife. On a number of occasions defendant left his job to return home because of the deceased's threats to his family.

The superintendent of the apartment building testified to the deceased's reputation in the neighborhood as a dangerous person who had threatened him with a knife. The superintendent had gone to the police to complain about the deceased's conduct. The landlord of the building where the deceased and the defendant lived testified about the deceased's reputation for violence. A person who did plumbing jobs testified that on the date of the killing, the deceased told him he was going to kill the defendant. Defendant and his wife testified that they made numerous complaints to the police. Precinct records, however, showed only one complaint. In June 1985 defendant purchased a gun for protection.

On the day of the homicide, the deceased approached defendant, who was working in the apartment building. Defendant saw what appeared to be the handle of a knife in Ruiz' waistband. Defendant testified that Ruiz threatened to kill him and his family that day. Ruiz also remarked that he would watch their bodies being carried out in plastic bags. Defendant's co-worker, the person who did plumbing work, testified that he did not see a knife, but did hear the threat to kill defendant. Alarmed at the turn of events, defendant returned to his apartment and advised his wife to prepare to go to her mother's apartment. He did not disclose the reason. Before leaving, he placed the gun in his jacket pocket.

As defendant and his family proceeded on Lexington Avenue to his mother-in-law's apartment at 158 East 109th Street (between Lexington and Third Avenue), he observed Ruiz

about a block away following them. After seeing his family inside his mother-in-law's building, he returned outside. Defendant confronted Ruiz on the corner of Lexington Avenue and 108th Street and asked him why he was following them. Defendant testified that Ruiz responded that he was going to kill the defendant and his family. At the same time, Ruiz lifted up his buttoned jacket and made a movement as if to reach for a black object in his waistband. Defendant did not know whether the black object was a gun or a knife. He testified that fearing for his own life, as well as the lives of his wife and child, he pulled out his gun and fired at the deceased, who stood approximately 7 or 8 feet away. Witnesses testified that the defendant chased the deceased to the corner of 108th Street, shooting at him. When he caught up with Ruiz, defendant put the gun to his neck and pulled the trigger. The gun did not discharge. He then struck Ruiz with the gun, saying, "You shouldn't have done that." Defendant then fled to his mother-in-law's building where the police arrested him. Ruiz died shortly after the shooting. Four gunshot wounds were present on the body, as well as some lacerations. A knife was found on the body, near the deceased's waistband.

On appeal, the defendant makes two arguments which have merit: (1) that the trial court's failure to give a justification charge which included the defense of third persons warrants reversal and dismissal of the indictment; and (2) that the trial court improperly denied the defense access to the deceased's psychiatric records.

Penal Law § 35.05 (2) states that conduct is justifiable and not criminal when, as an emergency measure and under appropriate circumstances, it is done to avoid a private injury which is about to occur. Specifically, Penal Law § 35.05 (2) reads as follows:

"§ 35.05 Justification; generally

"Unless otherwise limited by the ensuing provisions of this article defining justifiable use of physical force, conduct which would otherwise constitute an offense is justifiable and not criminal when * * *

"2. Such conduct is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding such injury clearly

outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue. The necessity and justifiability of such conduct may not rest upon considerations pertaining only to the morality and advisability of the statute, either in its general application or with respect to its application to a particular class of cases arising thereunder. Whenever evidence relating to the defense of justification under this subdivision is offered by the defendant, the court shall rule as a matter of law whether the claimed facts and circumstances would, if established, constitute a defense."

Penal Law § 35.15 (1) authorizes the use of physical force to the extent a person reasonably believes physical force is necessary to defend himself against the use or imminent use of unlawful physical force upon himself or a third person. Penal Law § 35.15 (2) authorizes the use of deadly physical force against another under certain circumstances which include the threatened use of deadly physical force against a defendant. Penal Law § 35.15 reads as follows:

"§ 35.15 Justification; use of physical force in defense of a person

"1. A person may, subject to the provisions of subdivision two, use physical force upon another person when and to the extent he reasonably believes such to be necessary to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by such other person, unless:

"(a) The latter's conduct was provoked by the actor himself with intent to cause physical injury to another person; or

"(b) The actor was the initial aggressor; except that in such case his use of physical force is nevertheless justifiable if he has withdrawn from the encounter and effectively communicated such withdrawal to such other person but the latter persists in continuing the incident by the use or threatened imminent use of unlawful physical force; or

"(c) The physical force involved is the product of a combat by agreement not specifically authorized by law.

"2. A person may not use deadly physical force upon another person under circumstances specified in subdivision one unless:

"(a) He reasonably believes that such other person is using or about to use deadly physical force. Even in such case, however, the actor may not use deadly physical force if he knows that he can with complete safety as to himself and

others avoid the necessity of so doing by retreating; except that he is under no duty to retreat if he is:

"(i) in his dwelling and not the initial aggressor; or

"(ii) a police officer or peace officer or a person assisting a police officer or a peace officer at the latter's direction, acting pursuant to section 35.30; or

"(b) He reasonably believes that such other person is committing or attempting to commit a kidnapping, forcible rape, forcible sodomy or robbery; or

"(c) He reasonably believes that such other person is committing or attempted to commit a burglary, and the circumstances are such that the use of deadly physical force is authorized by subdivision three of section 35.20."

If on any reasonable view of the evidence the jury might have decided that defendant's conduct was justified, the failure to so charge constitutes reversible error *(People v Padgett,* 60 NY2d 142, 145 [1983])*.* In considering "whether a particular theory of defense should have been charged to the jury, the evidence must be viewed in the light most favorable to the defendant" *(People v Farnsworth,* 65 NY2d 734, 735 [1985]; *see also, People v Padgett, supra,* at 144.)

■ A reasonable view of the evidence would support a justification charge which included the defense of defendant's wife and child. Defendant could reasonably have believed that deadly physical force was necessary to protect both himself and his family from imminent deadly force. It should be noted that a determination of reasonableness must be based on the circumstances facing a defendant and his situation. Those circumstances include any relevant knowledge the defendant had about the potential assailant and any prior experiences defendant had which could provide a reasonable basis for his belief that the other person intended to use deadly physical force. *(People v Goetz,* 68 NY2d 96 [1986].)

Here, the actual confrontation occurred against a backdrop of a relentless terror campaign against defendant and his family. Defendant knew that he, as well as his wife and child, were under threat of death. He had also heard of other aggressive acts by Ruiz. On the day of the homicide, Ruiz increased the tension by threatening to kill them all that day and by pursuing them with a weapon to their mother-in-law's house. Under these circumstances defendant could reasonably have believed that the safety of his family from imminent deadly attack was not guaranteed by their entrance into the

building. Defendant could have reasonably feared that after disposing of him (defendant), Ruiz would proceed into the mother-in-law's building in pursuit of Ms. Castro and her son.

In failing to include a defense of a third person in the justification charge, a defense which is supported by a reasonable view of the evidence, the trial court committed reversible error.

■ Second, the trial court denied the defendant's request for the psychiatric records of Ruiz without explanation. Those records reveal that in a 1983 admission to Metropolitan Hospital, the diagnosis of Ruiz was: (1) schizophrenia, paranoid type, (2) methadone dependence, (3) antisocial personality and (4) tubercular lung lesion. The record further reveals that Ruiz had been brought to the hospital in handcuffs by the police because "he attempted arson, homicidal ideation and threats towards 'aunt', violent behavior toward children in the neighborhood." The record also reveals a 20-year psychological history, impaired judgment, violent and assaultive behavior and a person who "clearly represents a potential danger to others." Although he was discharged as "much improved", the recommendation was for continued treatment.

The denial of access to these records deprived the defense of an opportunity to fully prepare its case and present a defense.

Finally, the denial of the psychiatric records to the defendant constituted the withholding of *Brady* material. *(See, Brady v Maryland,* 373 US 83 [1963].)* Those records were crucial as to who was the "initial aggressor" and as to whether defendant could retreat "with complete safety as to himself and others" in relation to the defense of justification. (Penal Law § 35.15.)

The importance of the psychiatric records becomes all the more crucial when it is noted that both defendant and prosecutor sought to elicit information concerning the deceased's sanity. While defendant's common-law wife, Theresa Castro, and the superintendent of the building, Angel Luis Negron, were both asked about the deceased's tendencies toward violence and his mental state, their testimony was impeached by questions from the prosecutor, not objected to by the defendant, concerning two arrests of Castro for drugs and stealing a dress and concerning an arrest or arrests of Negron for drug activity. No conviction of either person was brought out and the questions concerning arrests, without any reference to convictions, were prejudicial.

Finally, were we not reversing and remanding for a new trial, we would reduce the sentence to the minimum of 2 to 6 years.

Accordingly, the judgment of the Supreme Court, New York County (Davis, J.), rendered June 11, 1986, should be reversed, on the law and the facts, and a new trial ordered.

KUPFERMAN, J. P., KASSAL, ROSENBERGER and ELLERIN, JJ., concur.

Judgment, Supreme Court, New York County, rendered on June 11, 1986, unanimously reversed, on the law and the facts, and a new trial ordered.