[809 NYS2d 36]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CAM-
ILLO DOUGLAS, Appellant.

First Department, February 7, 2006

## APPEARANCES OF COUNSEL

*Robert S. Dean, Center for Appellate Litigation*, New York City (*Jonathan M. Kirshbaum* of counsel), for appellant.

*Robert T. Johnson, District Attorney*, Bronx (*Peter A. Sell* and *Karen Swiger* of counsel), for respondent.

## OPINION OF THE COURT

GONZALEZ, J.

A criminal defendant asserting the defense of justification is entitled to introduce evidence bearing on the reasonableness of his belief that the victim was about to use imminent deadly physical force against him (Penal Law § 35.15 [2] [a]). In this case, the trial court erred in precluding evidence that defendant was kidnapped and threatened by gang members associated with the victim the night before the shooting and in precluding evidence of the victim's prior violent acts known to defendant, both of which were relevant to his justification defense. We also find that defendant's statutory right to be present at all material stages of his trial was violated where his exclusion from a robing room conference concerning his justification defense could have substantially affected his ability to defend against the attempted murder and assault charges (CPL 260.20).

Defendant was found guilty in the shooting death of Lamar Williams, which occurred on January 14, 1999 in front of Truman High School in the Bronx. The defense sought to be introduced at trial was justification, grounded in defendant's allegation that the shooting was necessary to repel an imminent attack on him by Williams and other members of the Bloods gang. In support of this defense, defense counsel sought to establish that on the day before the shooting, the 17-year-old defendant and a friend, Carlos Rayven, were kidnapped and robbed at gunpoint by members of the Bloods, although they eventually escaped.[1] Later that night, according to defendant, he received a telephone call at home from one of the kidnappers, known as Little, who ordered him to bring money and jewelry to school the next day or he and his family would be killed. Defendant also requested permission to introduce evidence of prior violent acts committed by Williams through the testimony of defendant and another available witness.

The trial court precluded all of the evidence on the ground that it was not relevant to the issue of whether defendant was justified in shooting Williams on January 14. Instead, the court ruled that defendant could testify only as to the events of January 14, "that there was a dispute the night before" and that Williams had "injured people" on prior occasions. Defendant argues that the trial court's rulings deprived him of a fair trial and the right to present evidence in his own defense.

The prosecution's trial evidence, which included testimony from two police officers assigned to the school and a female friend of Williams, established that a confrontation occurred between defendant and Williams outside the school. According to the friend, defendant's mother arrived at the scene and pushed Williams, after which defendant produced a gun and shot Williams, fired four more shots seconds later, and was eventually arrested near the scene. Medical evidence showed that Williams sustained a gunshot wound to the left side of his neck, and that the shooter must have been either behind or to the side of Williams at the time he fired.

In contrast, defendant testified at trial that Little was friends with Williams and other Bloods. Little called him the night before and told him to bring $500 and his chain to school the next day, and there would be no more trouble, but if any Bloods

---

1. According to defendant, the Bloods kidnapped him and Rayven in retaliation for his alleged slashing of "Puchi," a youth also associated with the Bloods. Defendant denies the charge.

got arrested, he and his family would be killed. When defendant arrived at school the next day, he was approached by several Bloods, including Williams, who showed defendant a gun under his shirt and said "Little isn't here, but I'm here to do this shit." Seven or eight other youths brandishing box cutters also surrounded him. Then, a car pulled up and his mother intervened, at which point Williams slapped her. Defendant then swung at Williams, who reached for a gun. As defendant and Williams struggled for the gun, it went off, hitting Williams. As several youths ran toward defendant, he fired more shots because he was scared.[2]

"[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense' " (*Crane v Kentucky*, 476 US 683, 690 [1986], quoting *California v Trombetta*, 467 US 479, 485 [1984]). In this case, defendant raised the defense of justification, which authorizes an individual to use deadly physical force against another when he "reasonably believes that such other person is using or about to use deadly physical force" against him (Penal Law § 35.15 [2] [a]).

A determination of defendant's reasonable belief has both a subjective and objective component, and the "critical focus must be placed on the particular defendant and the circumstances actually confronting him at the time of the incident" (*People v Wesley*, 76 NY2d 555, 559 [1990]; *see People v Goetz*, 68 NY2d 96, 112-115 [1986]). Such relevant circumstances include any knowledge the defendant may have had about the victim, the physical attributes of those involved and any prior experiences that could provide a reasonable basis for the belief that deadly physical force was about to be used against him or her (*Goetz* at 114).

██ Supreme Court erred in precluding defendant from introducing evidence of the previous day's kidnapping/robbery in support of his justification defense. That defendant was victimized in a gunpoint attack and subsequently threatened by persons closely associated with Williams less than a day before the shooting was a highly relevant "prior experience[ ]" that could bear on the reasonableness of his belief that an attack by

---

2. Initially, the court made a preliminary ruling that defendant's evidence suggested an "accident" defense, not justification. However, after defendant testified and defense counsel provided case authority, the court properly ruled that justification should be charged notwithstanding the evidence suggesting an accidental shooting (*see People v Collier*, 303 AD2d 1008, 1009 [2003], *lv denied* 100 NY2d 579 [2003]).

deadly physical force was imminent (*Goetz* at 114; *see also People v Rivera*, 138 AD2d 169, 174-175 [1988], *lv denied* 72 NY2d 923 [1988]).

The fact that Williams was not present during the January 13 kidnapping/robbery does not justify the court's ruling. A defendant's "prior experiences" are not limited to those involving the victim, but instead may encompass any experiences of the defendant that logically bear on the defendant's subjective state of mind at the time of the charged crime (*Goetz* at 114). The robbery/kidnapping was especially relevant in this case where defense counsel's offers of proof made clear that he could connect Williams to the kidnappers by introducing evidence of their mutual association with the Bloods. In addition, Williams' statement immediately prior to the shooting that "Little isn't here, but I'm here to do this shit" provides confirmatory proof that Williams was made aware of the events of the day before and was now acting in concert with Little and the others.

The court's compromise ruling that defendant could elicit that "there was a dispute the night before" was plainly insufficient to capture the essence of the state of mind evidence sought to be introduced. Moreover, the ruling was unfairly exploited by the prosecutor who argued in summation that this was not a case about Bloods, but "[t]hese are kids, kids having a dispute" (*see People v Chevalier*, 220 AD2d 114, 117 [1996], *affd* 89 NY2d 1050 [1997]). In the absence of the preclusion ruling, defendant would have been able to call Rayven as a defense witness to corroborate his account of the kidnapping/robbery and to confirm his assertion that Williams and the kidnappers were all members of the Bloods.

The court further erred in precluding defendant's proposed evidence of two prior violent acts by Williams. A criminal defendant asserting a justification defense is allowed to introduce evidence of the victim's prior acts of violence of which the defendant had knowledge, provided that the acts are reasonably related to the defense raised by the defendant (*People v Miller*, 39 NY2d 543, 552 [1976] ["a basic sense of fairness mandates that the defendant be permitted to substantiate his claim that the victim committed specific violent acts in the past because it enlightens the jury on the state of the defendant's mind"]). Because the prior acts of violence alleged here appear to be sufficiently related in time and quality to the situation facing defendant in this case, evidence of their commission should have been admitted (*see id.* at 553-554).

The court's evidentiary rulings seriously impaired defendant's constitutional right to present a complete justification defense, and the error was not harmless (*see People v Crimmins*, 36 NY2d 230, 237 [1975]). Accordingly, the convictions for attempted murder and assault must be vacated and remanded for a new trial (*People v Frazier*, 6 AD3d 455, 456-457 [2004], *lv denied* 3 NY3d 658 [2004] [exclusion of evidence that victim ingested PCP before altercation prejudiced defendant's ability to present a complete justification defense]). Because, however, the defense of justification is not applicable to the charges of criminal possession of a weapon in the second and third degrees (*People v Pons*, 68 NY2d 264 [1986]; *People v Sebak*, 270 AD2d 166, 167 [2000], *lv denied* 95 NY2d 803 [2000]), the trial court's erroneous preclusion ruling did not affect those counts.

■ Defendant's convictions on the attempted murder and assault counts must be vacated for the additional reason that his right to be present at all material stages of his trial was violated. During defendant's direct testimony, defense counsel questioned him about certain violent acts committed by Williams in the past. The prosecutor objected and the court directed a robing room conference. When defendant was escorted into the robing room, the court excluded him, stating "[h]e can't come in here . . . [t]his is his testimony." Defense counsel responded "[s]orry," and the conference proceeded in defendant's absence.

A criminal defendant has a statutory right to be present at all material stages of a trial, including ancillary proceedings, when he or she may have something valuable to contribute or when his or her presence would have a substantial effect on the ability to defend against the charges (*People v Roman*, 88 NY2d 18, 25-26 [1996]; *People v Casiano*, 294 AD2d 277 [2002], *lv denied* 98 NY2d 767 [2002]; CPL 260.20). A key consideration in determining whether a defendant's presence would be useful or would affect his ability to defend is whether the proceeding "involved factual matters about which defendant might have peculiar knowledge that would be useful in advancing the defendant's or countering the People's position" (*People v Dokes*, 79 NY2d 656, 660 [1992]).

Contrary to the People's argument, the subject of the instant robing room conference clearly implicated defendant's peculiar factual knowledge such that his participation might have assisted him in advancing his justification defense to the murder and assault counts. The subject of the conference was whether defendant and a defense witness would be permitted to testify

as to a prior slashing and robbery committed by Williams. Since, as noted, prior violent acts of the victim that are known to the defendant are generally admissible in support of a justification defense, the only remaining issue the trial court had to decide was "whether the acts sought to be proved relate reasonably, in time and quality, to the defense raised by the defendant" (*Miller*, 39 NY2d at 552). Defendant's presence at the robing room conference would have afforded him the opportunity to apprise his counsel and the court of the exact details of these prior incidents in order to demonstrate that they were reasonably related in time and quality to the circumstances confronted by defendant on January 14 (*see id.*; *see also Dokes*, 79 NY2d at 661; *Casiano*, 294 AD2d at 278). For instance, defendant might have been able to show that the incidents were fairly recent and involved gang-related retribution or intimidation, as alleged by defendant in this case. Had defendant made such a showing, the court might have admitted such specific acts of violence instead of merely allowing defendant to vaguely assert that Williams had "injured people" on prior occasions.

Unlike *People v Fabricio* (3 NY3d 402, 406 [2004]), where the sidebar conference concerned a purely legal discussion of the admissibility of a prior inconsistent statement of the defendant and the prosecutor's good faith basis for the inquiry, this conference included an extended discussion of factual details within defendant's knowledge and critical to the court's determination as to whether the evidence was admissible (*see Dokes* at 661-662; *People v Turaine*, 78 NY2d 871 [1991]).

The trial court's apparent concern that defendant's presence at the conference might afford him the opportunity to tailor his testimony did not justify his exclusion. We are unaware of any authority holding that a defendant automatically waives his right to be present at any discussion of his potential trial testimony. The cases cited by the People are inapposite, as they involve a court's discretionary authority to prohibit a testifying defendant from discussing his testimony with counsel during a brief recess (*see Perry v Leeke*, 488 US 272, 280-285 [1989]). A criminal defendant's right to be present was not in issue in *Perry*, and that case does not support the People's contention that a defendant may "properly be excluded from robing room conferences pertaining to his testimony."

In sum, because the robing room conference regarding defendant's proposed testimony in support of his justification defense was a material stage of the trial with respect to the at-

tempted murder and assault counts, his exclusion therefrom was error and requires vacatur of those convictions and a new trial on those counts (*Dokes*, 79 NY2d at 662). Defendant's failure to object to his exclusion is not fatal to his claim (*id.*).

We note, however, that defendant's exclusion from the conference does not require reversal of the weapons counts. As mentioned, the only subject discussed was the proposed testimony concerning defendant's knowledge of Williams' prior violent acts, which was being offered solely to support defendant's justification defense. However, given that justification is not a valid defense to the weapons counts, it follows that the robing room discussion bore no relevance to those counts and defendant's absence therefrom could not have affected his ability to defend against them. Thus, where a defendant's presence at an ancillary proceeding could have a substantial effect on his or her ability to defend against some, but not all, of the charges in an indictment, the defendant's exclusion from such a proceeding requires reversal of only those counts in which the ability to defend was so affected.

Accordingly, the judgment of the Supreme Court, Bronx County (Phylis Skloot Bamberger, J.), rendered March 9, 2000, convicting defendant, after a jury trial, of attempted murder in the second degree, assault in the first degree and criminal possession of a weapon in the second and third degrees, and sentencing him to concurrent terms of 23 years, 23 years, 15 years and 7 years, respectively, should be modified, on the law, the attempted murder and assault convictions vacated, and the matter remanded for a new trial on those counts, and otherwise affirmed.

TOM, J.P., MAZZARELLI, ANDRIAS and FRIEDMAN, JJ., concur.

Judgment, Supreme Court, Bronx County, rendered March 9, 2000, modified, on the law, the attempted murder and assault convictions vacated, and the matter remanded for a new trial on those counts, and otherwise affirmed.