■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAMEL BAYARD, Appellant. [819 NYS2d 754]—

Judgment, Supreme Court, New York County (Budd G. Goodman, J.), rendered December 16, 2004, convicting defendant, after a jury trial, of robbery in the second degree and grand larceny in the fourth degree, and sentencing him, as a second felony offender, to concurrent terms of 7 years and 2 to 4 years, respectively, modified, on the law, to remand the matter for a new trial on the first count of the indictment, and otherwise affirmed.

The trial testimony established that defendant and the victim, who suffered from a mental disability, knew each other growing

up. On June 1, 2004, they ran into each other in Sheepshead Bay. Defendant accompanied the victim as he withdrew $587 from the bank, purchased a cell phone for $250, then dropped his bicycle off at a repair shop on West 96th Street in Manhattan. After the victim purchased the cell phone, defendant requested a loan of $100, which the victim refused twice.

Upon leaving the repair shop, located in the neighborhood where they grew up, they ran into defendant's brother, whom the victim recognized, and two other young men at 93rd Street and Amsterdam Avenue. Then, they walked to 120 West 94th Street where defendant said they would visit another friend. They entered the elevator there and someone pressed the button for the second floor. Someone else said "wrong floor" and pressed the ninth floor button. When the victim tried to exit at the ninth floor, defendant placed him in a chokehold. Although he could not see defendant's face, his assailant was wearing a gray sweatshirt and only defendant was wearing such a shirt. The victim lost consciousness momentarily, but upon recovering, was alone on the elevator and heard people running down the stairwell. He immediately discovered that his cell phone and remaining cash were missing. He exited the building and reported the robbery to officers in a nearby patrol car, describing defendant and the other perpetrators. Approximately an hour later, while canvassing the neighborhood with two detectives, the victim spotted defendant's brother and the other two young men; the detectives gave chase and captured the two young men, whom the victim identified. Defendant's brother escaped.

On June 3, 2004, defendant was arrested. The arresting detective testified that he and his partner knocked on the door of defendant's residence and when a woman answered, he identified himself as an officer and asked for defendant in regard to an incident in the 24th precinct (the West 96th Street area). The woman brought defendant to the door, and when the detective asked him to step outside into the hallway, he did and was arrested. The detectives did not have a warrant. The victim identified him outside the building.

Upon cross-examination by the People, the detective testified that after defendant's arrest, an arrest photo was taken and an arrest number assigned. Other testimony established that the photo shown at trial was indeed the arrest photo and that it matched defendant's arrest number. The photo, wherein defendant wore a gray sweatshirt, was introduced only to show his face, not to show what he was wearing.

The prosecution's theory of the case was that defendant com-

mitted robbery in the second degree aided by another person actually present (Penal Law § 160.10 [1]). However, arguing that there was no evidence that anyone on the elevator other than defendant took anything or committed any other act in furtherance of the crime, defendant requested that robbery in the third degree (Penal Law § 160.05) be submitted to the jury as a lesser included offense. The prosecution concurred in this request, agreeing that a reasonable view of the evidence would allow that defendant alone committed the robbery and that the others may not have shared his intent. The court declined to give this instruction, stating that such conclusion would be speculative.

The trial court committed reversible error in refusing to submit the lesser included crime to the jury, since the requirements for such submission were met (see *People v Maharaj*, 89 NY2d 997, 999 [1997]; *People v Glover*, 57 NY2d 61, 63-64 [1982]). The first requirement, that it is impossible to commit the crime of robbery in the second degree without simultaneously committing that of robbery in the third degree, is undisputed here. The second requirement, that a reasonable view of the evidence establishes that the defendant was guilty of the lesser, but not the greater, offense is also established. The only evidence is the victim's testimony that he was choked from behind, that he passed out, that he awoke to find his property missing, and that defendant was the sole person (of whom he was aware) who was involved in any way in any of these acts. None of the evidence reasonably eliminates the possibility that defendant acted alone. The issue of flight from the scene was one for the jury to consider relative to the codefendants' possible participation in the robbery, but of which the jury was effectively deprived by the court's ruling.

However, since the erroneous charge only related to the second-degree robbery count in the indictment, defendant's conviction of grand larceny in the fourth degree under the second count of the indictment should be affirmed (see *People v Douglas*, 29 AD3d 47 [2006], *lv denied* 6 NY3d 847 [2006]).

Defendant's *Payton* claim is without merit and his remaining contentions are academic. Concur—Andrias, J.P., Saxe, Williams and Sweeny, JJ.

McGuire, J., dissents in a memorandum as follows: I dissent, although I agree that Supreme Court erred in denying defendant's request that robbery in the third degree be submitted to the jury as a lesser included offense of the count of the indictment charging robbery in the second degree (Penal Law § 160.10 [1]). For the reasons stated below, I would hold this appeal in

abeyance pending submissions from the parties on the issue of the appropriate remedy.

The prosecution presented powerful proof that defendant's brother and the other two young men were active participants in the forcible taking of the victim's property. Without discussing the evidence in detail, suffice it to say that it includes the following: defendant and the others told the victim that they wanted to visit a friend in the building where the robbery occurred; someone, not defendant, stated "wrong floor" and pressed the button for the ninth floor; and, as he regained consciousness, the victim heard the sounds of a stairwell door close as the group ran away. Nonetheless, a reasonable juror could have entertained a reasonable doubt about whether the People had proven the aided-by-another-actually-present element of the second-degree robbery count of the indictment.[1]

The briefs of the parties do not address the issue of the appropriate corrective action when an intermediate appellate court concludes that the defendant's request for submission of a lesser included offense was improperly denied. Obviously enough, there are only two possibilities: (1) a new trial should be directed on the count for which the defendant was convicted (i.e., reversal of the conviction for robbery in the second degree), or (2) the judgment should be modified by reducing the conviction to the lesser included offense (i.e., modification of the conviction for robbery in the second degree to robbery in the third degree). As discussed below, the governing statute, CPL 470.20, does not purport to resolve this issue, and I am not aware of any authority discussing it. For its part, the majority does not cite any controlling authority. Indeed, it offers no explanation at all why it chooses one of these remedies rather than the other. I by no means exclude the possibility that there is controlling or persuasive authority on point. That possibility makes it all the more sensible for this Court to request further briefing from the parties. Further briefing certainly could not do any harm. The majority's refusal to take that prudent step is baffling at best.

What the appropriate remedy is under these circumstances, moreover, is an issue of considerable significance. To appreciate

---

    **1.** Defendant does not challenge the sufficiency or the weight of the evidence supporting the second-degree robbery conviction. In any event, sustaining a claim that "a reasonable view of the evidence . . . would support a finding that the defendant committed [a] lesser offense but did not commit the greater" (CPL 300.50 [1]) does not entail the conclusion that a verdict convicting the defendant of the greater offense is against the weight of the evidence (*see People v Bleakley*, 69 NY2d 490, 495 [1987] [setting forth the standard for review by intermediate appellate courts of the weight of the evidence]).

that, it is necessary to recognize that CPL 470.20 does not purport to answer it. To be sure, subdivision (1) of CPL 470.20 states that when an intermediate appellate court reverses "a judgment after trial for error or defect which resulted in prejudice to the defendant or deprived him of a fair trial, the court *must* . . . order a new trial of the accusatory instrument" (emphasis added). This provision would be controlling if it mandated a reversal in this case. However, it is not controlling precisely because it does not mandate a reversal, but simply specifies that a new trial must be directed if a judgment is reversed on this ground (*see People v Holmes*, 52 NY2d 976, 978 n [1981] [similarly noting that although subdivision (4) of CPL 470.20 mandates specific corrective action when a judgment is modified to reduce the conviction to one for a lesser included offense, "this statute does not require a reduction by the intermediate appellate court"]). For this same reason, subdivision (4) of CPL 470.20 does not control. That is, although it would require that defendant be resentenced if this Court modified the conviction by reducing it to robbery in the third degree, it does not require such a modification (*id.*).

The opening sentence of CPL 470.20, however, is highly relevant. It reads in full as follows: "Upon reversing or modifying a judgment, sentence or order of a criminal court, an intermediate appellate court *must* take or direct such corrective action as is necessary and appropriate both to rectify any injustice to the appellant resulting from the error or defect which is the subject of the reversal or modification *and* to protect the rights of the respondent" (emphasis added). In choosing between reversal and modification in this case, accordingly, this Court "must" both "rectify any injustice" to defendant *and* "protect the rights" of the People.

On the one hand, although the modification remedy would rectify the injustice to defendant, it could be prejudicial to the rights of the People. That the remedy of modification would not afford defendant any ground for complaint is clear. Because no other error occurred at trial, defendant would not be prejudiced by a modification reducing the conviction to third-degree robbery. In finding him guilty of second-degree robbery, the jury necessarily found him guilty of third-degree robbery. Thus, the modification would give to defendant all that he reasonably could have hoped for. As is evident, however, the modification could prejudice the rights of the People. After all, the jury might have convicted defendant of second-degree robbery even if third-degree robbery had been submitted as a lesser included offense. Yet, the modification would irrevocably deprive the People of an

opportunity to prove defendant's guilt of the top count, even though the verdict finding defendant guilty of that crime was supported by legally sufficient evidence and was not against the weight of the evidence. For all the majority knows, however, the People might prefer the modification over a reversal with a direction for a new trial. After all, it is conceivable that due to the passage of time (or for some other reason for which they are blameless) the People's ability to prosecute defendant has been compromised or weakened to such an extent that the People are unwilling to risk the possibility of a total acquittal.

On the other hand, reversal with a direction for a new trial is not necessarily a wholly satisfactory remedy. From the perspective of defendant, it would "rectify the injustice" to him to the extent he received at the new trial the right he improperly was denied at the first trial, i.e., the right to have the jury consider whether he was guilty only of the lesser included offense. But due to the passage of time (or for some other reason for which defendant might be blameless), the evidence at the new trial might be different in some relevant respect. If so, there might not be a reasonable view of the evidence that defendant committed the lesser but not the greater offense. Alternatively, there might be such a reasonable view, but new or different evidence might render it less persuasive. In either event, the result would or might be that defendant would irrevocably be deprived of the right he should have been accorded at the first trial. From the perspective of the People, for the reasons stated above, reversal with a direction for a new trial does not necessarily protect their rights.

At oral argument, defendant's attorney's position was that defendant should receive a new trial if this Court agreed that the trial court erred in not submitting third-degree robbery.[2] When specifically pressed, the Assistant District Attorney stated that he had not been authorized to take a position on the appropriate remedy. If both parties agree on the remedy in any given case, it is difficult to see why this Court would hesitate to direct the agreed-upon relief. By proceeding as the majority

---

**2.** In another case, the defendant might be unwilling to risk being convicted again of the top count. Consider the position of a defendant convicted of second-degree murder and sentenced to 25 years to life, who presses on appeal a meritorious claim that the trial court erred in not submitting first-degree manslaughter to the jury as a lesser included offense. Such a defendant might urge the intermediate appellate court to modify the judgment by reducing the conviction to that lesser offense. Depending on numerous circumstances, it is conceivable that the People might agree. The one and only positive aspect of the majority's opinion is that it does not purport to state a rule applicable to all cases.

does, this Court is prevented from knowing whether the remedy is agreed upon and deprives the People of an opportunity to present a considered position on the appropriate remedy.

There are additional complexities here. In any particular case, for example, the appropriate remedy might turn on or be influenced by whether the People opposed or agreed with the defendant's request for the submission of the lesser included offense. Another relevant factor would appear to be whether the defendant was diligent in perfecting an appeal that contends the trial court erred in not submitting a lesser included offense. After all, if the defendant has fully or nearly served the sentence by the time the appeal is perfected, an intermediate appellate court might determine that there would be little purpose served in directing a new trial (unless, perhaps, as in this case, the lesser offense is not denominated a violent felony offense but the offense for which the defendant was convicted is denominated a violent felony offense). Whether an intermediate appellate court must, in determining the appropriate remedy, weigh the sufficiency of the evidence, even absent a claim that the verdict is against the weight of the evidence, is another complexity. It may be, moreover, that there are sound reasons, based on analogous precedents, not to consider some of the possibilities of prejudice noted above. These complexities provide additional reasons to hold this appeal in abeyance and request further briefing from the parties.

Finally, I agree that defendant's *Payton* claim is meritless but think the claim warrants more than the summary treatment it receives from the majority. Prior to trial, defendant filed an omnibus motion and requested, inter alia, a *Payton* hearing on the ground that he was arrested inside his apartment without a warrant. Accordingly, defendant sought an order suppressing "all police arranged identifications, statements, and physical evidence" that resulted from his assertedly unlawful arrest. Thereafter, Supreme Court (Richard D. Carruthers, J.) granted his motion for a *Payton* hearing. Immediately prior to trial, however, Justice Goodman ruled that a *Payton* hearing was pointless. Defendant unsuccessfully objected that Justice Carruthers's determination that he was entitled to a *Payton* hearing was the "law of the case."

On this appeal, defendant renews his claim that under the law of the case doctrine he was entitled to a *Payton* hearing prior to trial. The doctrine, however, is not an inflexible one that always binds a court to adhere to a ruling made by another court of coordinate jurisdiction, regardless of changes in the law or otherwise controlling facts (*see Foley v Roche*, 86 AD2d 887

[1982], *lv denied* 56 NY2d 507 [1982]). When the parties appeared for trial, defense counsel informed Justice Goodman that Justice Carruthers had ordered a *Payton* hearing. When Justice Goodman asked the prosecutor whether any property had been recovered from defendant, the prosecutor replied, "No." The prosecutor went on to state that she intended to elicit defendant's written statement only if defendant elected to testify at trial. As Justice Goodman correctly observed, the statement would be admissible for impeachment purposes "whether [defendant] wins the *Payton* or not" (*see Harris v New York*, 401 US 222 [1971]). When Justice Goodman ruled that there was "no purpose to have a *Payton* hearing," defense counsel never urged that anything could be suppressed on account of the alleged *Payton* violation and stated only "I respectfully take exception."

Under the circumstances, to conduct a *Payton* hearing would have been "a procedural luxury of the purest sort" (*People v Gruden*, 42 NY2d 214, 217 [1977]). The prosecutor's representation that she would not seek to introduce defendant's statement on the People's case-in-chief constituted a sufficient change in the facts to warrant Justice Goodman's decision not to adhere woodenly to the prior ruling (*Foley v Roche, supra*).[3]

In sum, I would hold this appeal in abeyance pending submission from the parties on the appropriate remedy.

**3.** To the extent defendant is claiming that the arrest photograph should have been suppressed as the fruit of his allegedly unlawful arrest, that claim is not preserved for review (*see People v Morales*, 250 AD2d 782 [1998], *lv denied* 92 NY2d 984 [1998]), and I would not review it in the interest of justice. It would, in any event, be meritless (*People v Jones*, 2 NY3d 235, 243-245 [2004] [holding that where a lineup is conducted after a defendant is arrested in his home in violation of *Payton*, the New York State Constitution does not prohibit the introduction in evidence of eyewitness lineup identifications]).