■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSE RIVERA, Appellant. [900 NYS2d 31]—

Judgment, Supreme Court, Bronx County (Thomas A. Farber, J.), rendered May 16, 2006, convicting defendant, after a jury trial, of criminal possession of a weapon in the second degree, and sentencing him, as a second violent felony offender, to a term of 15 years, to be followed by five years of postrelease supervision, affirmed.

This crime resulted in a man's death. However, the jury acquitted defendant of homicide charges, only convicting him of criminal possession of a weapon in the second degree. Defendant's appeal centers on two related issues: (1) the lack of language in the charge that justification negated the unlawful intent component of criminal possession of a weapon in the second degree; and (2) the court's refusal to submit criminal possession of a weapon in the fourth degree as a lesser included offense. For the following reasons, we reject defendant's position. First, defendant did not request a justification charge with respect to the count for second degree possession and accordingly has failed to preserve this issue. Even if defense counsel had requested a justification charge in connection with criminal possession of a weapon in the second degree, it is questionable whether the court could have granted that request (*see People v Pons*, 68 NY2d 264, 267 [1986] ["because possession of a weapon does not involve the use of physical force, there are no circumstances when justification can be a defense to the crime of criminal possession of a weapon" (citations omitted)]). More important, no reasonable view of the evidence supported anything other than defendant's possession of the weapon with intent to use it unlawfully.

The crime occurred after midnight on August 2, 2003. The victim was Owen Ferguson, also known as Danny Dred. Yolanda Jenkins testified for the prosecution. Apparently, Jenkins and

the victim were planning to attend a party and had met in front of the building where she lived on Sherman Avenue. Defendant lived in the same building. Jenkins said that she and Ferguson noticed defendant enter a restaurant across the street. At some point, a friend, Ebony Williams, joined them.

Defendant owed Ferguson money from a drug purchase and Ferguson went into the restaurant presumably to talk to him about the drug debt. Jenkins observed Ferguson and defendant gesturing in conversation. Ferguson exited the restaurant about five minutes later. Defendant pulled out a black gun and shot him three times. Jenkins testified that the victim had not turned around to face defendant, although in her grand jury testimony, Jenkins indicated that the victim had turned towards defendant whereupon defendant took out his gun. Jenkins testified that the victim did not have a gun.

Both Jenkins and Ebony Williams fled. According to Jenkins, defendant allegedly followed Jenkins into a doorway, held the gun to her head and threatened to kill her if she said anything. The defendant then ran into the building where they both lived.

Ferguson bled to death from the gunshot wounds. Medical testimony indicated that Ferguson had been shot four to five times, but from more than 18 to 30 inches away.

Defendant was arrested later that night. At the precinct, after a detective read him his *Miranda* rights, defendant wrote and signed a statement. In that statement defendant explained: "I, Jose Rivera, was read my Miranda Warnings by Detective Rodriguez. I am making this statement voluntarily. I, Jose Rivera, used to sell weed for Danny Dred [Ferguson]. I had owed him eighty dollars for two days. Danny Dred was looking for me. He was going around asking people for me. I didn't have the money, so I stood [sic] home last night. I came outside because I got forty dollars from my friend about 10 PM or 11 PM, I was walking with my friend and I seen Danny with his girl. He seen me walking. So, he told his girl something. She went to the basement, came back out, handed him something. So, I got scared, because I thought he had a knife or gun. I went into the chicken place because I felt safer there with people and cameras. As I go in the food spot, I sat by the crowd. As I looked through the window, I seen Danny approaching the door. *So, my friend hand me the pistol from the side*. Danny came in with his hand in his pocket. He kept yelling and screaming at me. I told him, I had forty dollars. He said, fuck that. He want his money now. Kept reaching in his pocket. He told me come out the store. He didn't know I was armed. He kept screaming at me, with his hand in his pocket, come out the store now. As he walked and I came

behind him, as soon as we walked out, he reached again. I got so scared, I fired three shots and ran home. I didn't want this to happen. But his actions put me in fear of being hurt and I reacted" (emphasis added).

In defendant's videotaped confession he further explained that his friend gave him the gun at the same time he saw Jenkins give Ferguson "something."

Ebony Williams, testifying for the defense, gave a different account of the crime. She started out the night smoking marijuana with defendant, his girlfriend and Jenkins in apartment 4B in the Sherman Avenue building. She claimed this was her own apartment. Williams testified that Jenkins called the victim and told him to get more marijuana. Then Jenkins left to pick it up. After a while, Williams left the apartment with defendant's girlfriend to find Jenkins.

Williams testified that later she saw defendant with another man named Eric who indicated that he and defendant were going to get something to eat. She then saw Jenkins talking with Ferguson. Jenkins joined Williams. The two women heard shots, but could not see where the shots came from. Together, they ran into the building, where they remained for 25 minutes. After that, they went together to apartment 4B. Williams testified that she did not see defendant with a gun.

The charges against defendant included murder in the second degree. The court submitted manslaughter in the first degree as a lesser included offense of intentional murder. On the homicide counts, the court submitted a justification charge. The court informed counsel that it would charge criminal possession of a weapon in the second degree, for which culpability was independent from the homicide charges, but denied defendant's application to submit criminal possession of a weapon in the fourth degree as a lesser included offense. Significantly, defendant did not request a justification charge with respect to criminal possession of a weapon in the second degree. And, when the court submitted that count to the jury, it did not provide a justification charge.

As applicable at the time of the crime, criminal possession of a weapon in the second degree requires, inter alia, that the perpetrator have the intent to use the firearm unlawfully against another (Penal Law § 265.03). Defendant argues that he possessed the gun only in self-defense and therefore lacked the requisite intent to support second degree possession of a weapon. Lacking intent to use a firearm unlawfully against another, he argues he merely possessed a firearm which would render him guilty only of fourth degree possession (Penal Law

§ 265.01 [1] [possessing any firearm]). A trial court need only submit a lesser offense to the jury when there is a reasonable view of the evidence to support that finding (*see People v Negron*, 91 NY2d 788, 792 [1998]). Contrary to defendant's arguments, no reasonable view of the evidence supported submission of the charge of criminal possession of a weapon in the fourth degree as a lesser included offense. First, defendant admits in his confession that he followed the victim out of the restaurant and shot the victim in the back at least three times. Jenkins' trial testimony also shows that the victim had not turned around to face defendant and that defendant shot the victim in the back. This precludes the possibility that defendant used the gun only in self-defense.

Further, the gun was indisputably loaded. Defendant stated that his friend handed him the gun as he saw Ferguson approach the door. Moreover, while defendant did not have the gun until his friend handed it to him in the restaurant, the two had been together earlier in the evening. Also, defendant had been hanging out earlier with Ferguson's girlfriend and presumably knew that she had asked Ferguson to obtain more marijuana for them. Thus, defendant knew he had a good chance of running into Ferguson and that a loaded gun was within easy reach. Defendant was aware of these circumstances before he allegedly saw the victim's girlfriend hand "something" to the victim. This sequence of events negates any reasonable possibility that defendant could have been guilty of merely possessing the gun. (*See People v Marrero*, 187 AD2d 281, 281 [1992], *lv denied* 81 NY2d 791 [1993] [no reasonable view of the evidence could establish that defendant possessed a pistol that was not loaded].)

Regardless, even if, as the dissent argues, defendant did not have the intent to use the gun unlawfully at the precise moment his friend handed it to him, there is no reasonable view of the evidence that he lacked such intent when the victim left the restaurant and defendant followed him outside. Notably, in his statement to the police, defendant never indicated that the victim forced him to leave the restaurant or threatened any harm if he did not come outside. Thus, contrary to the dissent's contention, our conclusion is not based on speculation but on defendant's own statement. Accordingly, the court's refusal to submit criminal possession of a weapon in the fourth degree as a lesser included offense to second-degree possession was appropriate. As the Court of Appeals noted in *People v Pons* (68 NY2d 264 [1986]): "it does not follow that because defendant was justified in the actual shooting of the weapon under the

particular circumstances existing at that moment, he lacked the intent to use the weapon unlawfully during the continuum of time that he possessed it prior to the shooting" (*id.* at 267-268).

As discussed earlier, the gun was within easy reach of defendant well before he ran into Ferguson, defendant must have known that there was a good possibility that he would run into Ferguson eventually that evening and defendant took the gun from his friend when he saw Ferguson approaching the restaurant. Thus, no reasonable view of the evidence supports defendant's position that "he lacked the intent to use the weapon unlawfully during the continuum of time that he possessed it prior to the shooting."

Defendant's claim that the jury, by acquitting him of homicide charges, accepted his justification defense speculates as to the jury's thought processes and does not warrant a different result (*see People v Hemmings*, 2 NY3d 1, 5 [2004]; *People v Rayam*, 94 NY2d 557, 561 [2000]). Among other things, the jury could have concluded that, even if defendant was justified in shooting Ferguson, he otherwise possessed the weapon with intent to use it unlawfully, or the jury "could have found mitigating circumstances falling short of legal justification but meriting leniency" (*People v Gonzalez*, 71 AD3d 472, 473 [2010]).

Nor did defendant preserve his challenge to the sufficiency of the evidence and we decline to review it in the interest of justice as well. As an alternative holding, we find that the evidence was legally sufficient. We further find that the verdict was not against the weight of the evidence (*see People v Danielson*, 9 NY3d 342, 348-349 [2007]).

To the extent that defendant is raising an ineffective assistance of counsel claim, we find that he received effective assistance under the state and federal standards (*see People v Benevento*, 91 NY2d 708, 713-714 [1998]; *see also Strickland v Washington*, 466 US 668 [1984]).

The record does not establish that defendant's sentence was based on any improper criteria, and we perceive no basis for reducing the sentence. Concur—Sweeny, Moskowitz and Richter, JJ.

Saxe, J.P., and Acosta, J., dissent in part in a memorandum by Acosta, J., as follows: I dissent because in my opinion, defendant was entitled to a charge on the lesser included offense of criminal possession of a weapon in the fourth degree.

Prosecution witness Yolanda Jenkins, who lived in the same apartment building as defendant, had been smoking marijuana

with her boyfriend, Owen Ferguson, a drug dealer, all day on August 1, 2003. Shortly after midnight, Jenkins and Ferguson, who were planning to attend a party, met in front of a building on East 165th Street and Sherman Avenue, where they met up with Ebony Williams. Jenkins saw Ebony's boyfriend, Eric, and defendant, who owed Ferguson $80 from a purchase of marijuana, enter a chicken restaurant across the street. Although Jenkins testified at trial that Ferguson entered the restaurant a few minutes later to eat before heading off to the party, according to her grand jury testimony, he went to the restaurant to speak to defendant about the $80 debt. Jenkins could see into the restaurant, and observed Ferguson and defendant, both gesturing, in conversation. She was able to see that Ferguson was upset. When Ferguson exited the restaurant about five minutes later with no weapon in hand, defendant pulled out a gun and shot him. She testified that Ferguson had not turned around to face the defendant, who shot him from a short distance away. She heard two shots at that time, then a third shot as she fled in one direction and Ebony fled in the opposite direction.

According to Jenkins, as she ducked into a doorway, defendant entered after her. He grabbed her shirt, put the gun to the back of her head, threatened to "kill [her] too" if "[she] opened [her] mouth," and ran into the building where they both lived. She eventually went to the hospital where Ferguson had been taken.

Detective Daniel Mullarkey interviewed Jenkins at the hospital and at the precinct. In a first signed statement, she did not indicate that she had observed the shooting. In a subsequent signed statement, she indicated that she had. Jenkins testified that she told Mullarkey that defendant had owed money to Ferguson.

Defendant was arrested on August 2, 2003 at his home. After being informed of his *Miranda* rights, defendant wrote and signed a statement, where he stated: "I, Jose Rivera, was read my Miranda Warnings by Detective Rodriguez. I am making this statement voluntarily. I, Jose Rivera, used to sell weed for Danny Dred [Ferguson]. I had owed him eighty dollars for two days. Danny Dred was looking for me. He was going around asking people for me. I didn't have the money, so I stood [*sic*] home last night. I came outside because I got forty dollars from my friend about 10 PM or 11 PM, I was walking with my friend and I seen Danny with his girl. He seen me walking. So, he told his girl something. She went to the basement, came back out, handed him something. So, I got scared, because I thought he

had a knife or gun. I went into the chicken place because I felt safer there with people and cameras. As I go in the food spot, I sat by the crowd. As I looked through the window, I seen Danny approaching the door. So, my friend hand me the pistol from the side. Danny came in with his hand in his pocket. He kept yelling and screaming at me. I told him, I had forty dollars. He said, fuck that. He want his money now. Kept reaching in his pocket. He told me come out the store. He didn't know I was armed. He kept screaming at me, with his hand in his pocket, come out the store now. As he walked and I came behind him, as soon as we walked out, he reached again. I got so scared, I fired three shots and ran home. I didn't want this to happen. But his actions put me in fear of being hurt and I reacted."

An assistant district attorney testified that she conducted a videotape of defendant's confession, in which he provided a more elaborate statement, now stating that, on 165th Street, a friend gave him the gun at the same time that Jenkins gave Ferguson "something."

Ebony Williams testified for the defense that she had spent the night of August 1st smoking marijuana with defendant, his girlfriend, and Jenkins. Jenkins left to pick up more marijuana from Ferguson. After a while, she accompanied defendant's girlfriend to find Jenkins, and waited on the corner, across from the chicken restaurant. There, she saw defendant with Eric, who indicated they were going to get something to eat, then saw Jenkins talking with Ferguson, who joined her. She claimed that a truck blocked her and Jenkins's view of the restaurant, and she did not see Ferguson enter it. She and Jenkins were face-to-face, as she looked for her keys, when they heard shots, but they could not see where the shots were from. Williams and Jenkins ran into a building where they remained for about 25 minutes, after which they went to her apartment. Williams testified that she did not see defendant with a gun.

The court submitted murder in the second degree (intentional murder) and manslaughter in the first degree as a lesser included offense. Given defendant's confession, it submitted a justification charge with respect to the homicide charges. It also charged criminal possession of a weapon in the second degree, as to which culpability was independent from the homicide charges, but denied defendant's application to submit criminal possession of a weapon in the fourth degree as a lesser included offense, on the basis that no reasonable view of the evidence supported that charge. The jury acquitted defendant of the homicide charges, and convicted him of criminal possession of a weapon in the second degree.

I agree with the majority that the verdict was supported by legally sufficient evidence and was not against the weight of the evidence. On these facts, however, the court erred in refusing to charge criminal possession of a weapon in the fourth degree (Penal Law § 265.01 [1] [possessing any firearm]), which does not require that defendant had the intent to use it unlawfully, since defendant's statement to the police sets forth a reasonable view of the evidence (CPL 300.50 [1]; *People v Glover*, 57 NY2d 61 [1982]) in which he never intended to use the weapon for anything other than a justifiable purpose (*see People v Discala*, 45 NY2d 38, 41-42 [1978]). In *Discala*, the Court noted that "[i]n deciding whether to submit a lesser included offense to the jury, it has been emphasized that '[t]he court's appraisal of the persuasiveness of the evidence indicating guilt of the higher count is irrelevant.' Rather, the focus is on whether there is some reasonable basis in the evidence for finding the accused innocent of the higher crime, and yet guilty of the lower one. In other words, it is not for the Trial Judge to speculate as to what will be the ultimate finding of the jury; the court simply determines if there is a reasonable view of the facts which would support a conviction of the lesser crime but not the greater. The evidence must be viewed in the light most favorable to the defendant, and a court must recognize that the jury may decide to accept only part of the prosecution's proof. The net effect of submitting the lesser charge may be that the jury will simply extend mercy, but this is acknowledged to be an 'inevitable consequence of the jury system' " (*id.* [citations omitted]).

Significantly, inasmuch as it appears that defendant's use of a weapon was found to be justified as evidence by his acquittal of the homicide charges, a determination that he possessed the weapon with unlawful intent must be based on his intent at a time other than during the justified use of force (*People v Pons*, 68 NY2d 264, 268 [1986]).* Clearly, he did not possess the weapon prior to the incident; it was given to him when Ferguson entered the restaurant in a menacing manner with his hand in his pocket, suggesting that he was armed. The majority makes

---

* As the Court noted in *Pons* (68 NY2d at 267-268): "[I]t does not follow that because defendant was justified in the actual shooting of the weapon under the particular circumstances existing at that moment, he lacked the intent to use the weapon unlawfully during the continuum of time that he possessed it prior to the shooting. Whether the People established beyond a reasonable doubt that defendant possessed the weapon during that period 'with intent to use [it] unlawfully against another' (Penal Law § 265.03) was a question for the jury to determine based on the court's charge pertaining to the elements of the crime and to the proof necessary to establish unlawful intent." (Citation omitted.)

light of these facts by suggesting that defendant knew that his friend had a readily-available weapon because the two had been together earlier in the day, but this is mere speculation, which in any event could have been rejected by the jury. As for possession after the incident, although Jenkins's testimony provided the People with evidence that defendant unlawfully possessed the gun after the "justifiable" shooting when he threatened to kill Jenkins if she told anyone, the jury was certainly free to reject Jenkins's testimony in favor of that of Williams, who stated that she and Jenkins ran into the building where they remained for 25 minutes. Had the jury favored Williams's testimony, there was no other evidence indicating that defendant possessed the weapon after the incident. Drawing all evidentiary inferences in the proponent's favor, criminal possession of a weapon in the fourth degree should have been charged (*People v Devonish*, 6 NY3d 727, 728 [2005]; *People v Henderson*, 41 NY2d 233, 236 [1976]), and the court's refusal requires reversal (*see e.g. People v Cabassa*, 79 NY2d 722, 728-729 [1992], *cert denied sub nom. Lind v New York*, 506 US 1011 [1992]; *People v Martin*, 59 NY2d 704, 706 [1983]; *People v Bayard*, 32 AD3d 328, 330 [2006]).

The majority posits that there is no reasonable view of the evidence supporting a charge for criminal possession of a weapon in the fourth degree by noting that defendant admitted in his confession that he followed the victim out of the restaurant and shot him in the back, and that Jenkins's trial testimony corroborates that the victim did not turn around to face defendant. In his statement, however, defendant states that he possessed the gun solely for self-defense when he feared that Ferguson was going to harm him. Specifically, he stated that "[Ferguson] seen me walking. So, he told his girl something. She went to the basement, came back out, handed him something. So, I got scared, because I thought he had a knife or gun. I went into the chicken place because I felt safer there with people and cameras. As I go in the food spot, I sat by the crowd. As I looked through the window, I seen [Ferguson] approaching the door. So, my friend hand me the pistol from the side."

He later explained that his friend gave him the gun at the same time that Ferguson's girlfriend gave him "something," presumably a weapon. In addition, he explained why he went outside: "[Ferguson] came in with his hand in his pocket. He kept yelling and screaming at me. I told him, I had forty dollars. He said, fuck that. He want his money now. *Kept reaching in his pocket. He told me come out the store*. He didn't know I was armed. *He kept screaming at me, with his hand in his pocket,*

*come out the store now*. As he walked and I came behind him, *as soon as we walked out, he reached again. I got so scared, I fired three shots and ran home*. I didn't want this to happen" (emphasis added). And, although Jenkins testified at trial that Ferguson did not turn around to face defendant, she had earlier testified before the grand jury that Ferguson "turned around and that is when [defendant] pulled out the gun." Since the facts must be viewed in the light most favorable to defendant, I disagree with the majority that no reasonable view of the evidence supports the charge.

Nor does the fact that the pistol was loaded defeat the charge. As applicable at the time of the crime, a person is guilty of criminal possession of a weapon in the second degree pursuant to Penal Law § 265.03 (former [2]) when "with intent to use the same unlawfully against another . . . [h]e possesses a loaded firearm." One who possesses a loaded firearm without unlawful intent necessarily "possesses any firearm" (Penal Law § 265.01 [1]), and thus commits fourth-degree possession, but absent that intent, does not commit second-degree possession (*see People v Vaccaro*, 44 NY2d 885, 886 [1978] [by statutory definition criminal possession of a weapon in the fourth degree is a lesser included offense of criminal possession of a weapon in the second degree]; *People v Sotelo*, 176 AD2d 458 [1991], *lv denied* 80 NY2d 838 [1992]). The fact that the pistol was loaded in *Vaccaro* permitted the court to refuse to charge criminal possession of a weapon in the fourth degree as a lesser of possession in the second degree only because defendant was charged with possession in the fourth degree pursuant to Penal Law § 265.01 (2). That section defines possession in the fourth degree as possessing, among other things, a deadly weapon with the intent to use it against another. The term "deadly weapon" is defined as "any loaded weapon from which a shot, readily capable of producing death or other serious physical injury, may be discharged" (Penal Law § 10.00 [12]). Thus, where it is undisputed that the gun was loaded, it would be theoretically impossible to commit the lesser and not the greater (*Vaccaro* at 886). But in this case, defendant was not charged with criminal possession of a weapon in the fourth degree pursuant to Penal Law § 265.01 (2). He was therefore entitled to the charge pursuant to Penal Law § 265.01 (1).

*People v Marrero* (187 AD2d 281 [1992], *lv denied* 81 NY2d 791 [1993]), cited by the majority, is inapposite. There, the Court denied the request to submit fourth-degree possession because it was not a lesser included offense of third-degree possession. The only difference between those statutes prior to 2006 was

that for third-degree possession, the firearm had to be loaded (*see* Penal Law § 265.02 [former (4)]). Thus, if it was undisputed that the weapon was loaded, there could be no reasonable view of the evidence that a defendant did not commit the greater crime. Here, by contrast, the difference between fourth-degree possession and second-degree possession also includes unlawful intent. And, as shown above, a reasonable view of the evidence supports the charge that defendant possessed a firearm without the intent to use it unlawfully.

Defendant further argues that he was entitled to a charge on the additional language in the criminal jury instruction (CJI) applicable to situations where there is evidence of an intent to use the firearm justifiably. That charge states:

"The defense of justification does not apply to this crime because that defense applies only to the use of force. You may, however, in determining whether or not the defendant had the intent required for this crime consider the following:

"The use of a firearm . . . to engage in conduct that is justifiable under the law is not unlawful. Thus, an intent to use a firearm . . . against another justifiably is not an intent to use it unlawfully.

"Therefore, to find the defendant guilty of this crime, you must find beyond a reasonable doubt that he/she possessed the firearm . . . with the intent to use it against another unlawfully and not solely with the intent to use it justifiably." (CJI2d[NY] Penal Law art 265, Intent to Use Unlawfully and Justification [citing *People v Pons* (68 NY2d 264 [1986]) as support for the pattern instruction]; *People v Richards*, 22 Misc 3d 798, 806 [Crim Ct, NY County 2008]).

While the CJI indicates this language should be used where the statutory presumption of unlawful intent is charged, which it was not here, there is no indication that this charge should not be used whenever it is applicable. Inasmuch as defendant did not request this charge, however, the issue is not preserved for our review and I decline to review it in the interest of justice. I also reject defendant's assertion that counsel was ineffective for failing to request this charge, where counsel's representation, on the whole, appears to have been meaningful (*see People v Borrell*, 12 NY3d 365 [2009]).